JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
EB HOLDINGS II, INC. and QXH II, INC.

## DEFENDANTS
ILLINOIS NATIONAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, and FEDERAL INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff   Clark
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Springfield
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory E. Garman, Talitha Gray Kozlowski, Garman Turner Gordon LLP, (725) 777-3000; Shara L. Larson, Ghandi Deeter Blackham, (702) 878-1115; Paul C. Fuener, K&L Gates, (412) 355-6500

Attorneys *(If Known)*
Carleton R. Burch, Janiece S. Marshall, Anderson, McPharlin & Conners LLP; Chad C. Butterfield, Wilson, Elser Moskowitz Edelman & Dicker LLP; Jeffrey D. Olster, Lewis Brisbois & Smith LLP

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
    Plaintiff

☐ 3   Federal Question
    *(U.S. Government Not a Party)*

☐ 2   U.S. Government
    Defendant

☒ 4   Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from Another District *(specify)*    ☐ 6  Multidistrict Litigation - Transfer    ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2201 ; Nev. Rev. Stat. § 686A.310
Brief description of cause:
Declaratory Judgment; Violation of Nevada Unfair Claims Settlement Practices Act; Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
Over

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
12/11/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
Email: tpilatowicz@gtg.legal
DYLAN T. CICILIANO, ESQ.
Nevada Bar No. 12348
Email: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Attorneys for EB Holdings II, Inc.*

K&L GATES LLP
THOMAS E. BIRSIC, ESQ.
(will comply with LR IA 11-2 within 7 days)
Email: thomas.birsic@klgates.com
PAUL C. FUENER, ESQ.
(will comply with LR IA 11-2 within 7 days)
Email: paul.fuener@klgates.com
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Tel: (412) 355-6500

GHANDI DEETER BLACKHAM
SHARA L. LARSON, ESQ.
Nevada Bar No. 7786
Email: shara@ghandilaw.com
725 S. 8th St., Suite 100
Las Vegas, Nevada 89101
Tel: (702) 878-1115
*Attorneys for QXH II, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EB HOLDINGS II, INC. and QXH II, INC., | Case No.: _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| ILLINOIS NATIONAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, and FEDERAL INSURANCE COMPANY, | **JURY DEMAND** |
| Defendants. | |

Plaintiffs EB Holdings II, Inc. ("EBH") and QXH II, Inc. ("QXH," and together the "Insureds") file this *Complaint* against Defendants Illinois National Insurance Company, Continental Casualty Company, and Federal Insurance Company (collectively, the "Defendants"), alleging on personal knowledge as to all facts concerning itself and on information and belief as to all others, as follows:

. . .

. . .

1

**Introduction**

2      1.      In the ordinary course of business and in a prudent exercise of risk management,

3    the Insureds maintain various insurance policies to cover key aspects of their business, including

4    director, officer, and private company liability insurance policies.

5      2.      For the policy period October 31, 2015 to November 1, 2016, Defendants issued

6    four primary and excess-layer director, officer, and private company liability policies that provide

7    coverage to the Insureds for, *inter alia*, breaches of duty, neglect, errors, misstatements, misleading

8    statements, omissions, or other acts.

9      3.      Pursuant to these policies, at the request of the Insureds, Defendants are required to

10   assume the defense of the Insureds, irrespective of whether the claims brought against the Insureds

11   are groundless, false, or fraudulent.  Additionally, irrespective of whether defense is assumed, the

12   Defendants are required to advance the defense costs for any claims until their final disposition.

13     4.      Despite accepting all insurance premiums, when the Insureds were faced with

14   claims covered by these insurance policies, the primary insurer, Defendant Illinois National

15   Insurance Company ("Illinois National"), failed to assume the Insureds' defense or to advance

16   defense costs, took nearly a year to provide its formal coverage position in response to the

17   Insureds' notice of the litigation, and ultimately refused to defend the Insureds or to pay their

18   defense costs.  The other Defendants issuing excess-layer policies followed Illinois National in

19   failing to provide coverage to the Insureds.

20     5.      In this action, the Insureds seek a declaration of their rights to insurance coverage,

21   including advancement and/or payment of defense costs, under the insurance policies issued by

22   the Defendants.

23     6.      Specifically, the Insureds seek, from Illinois National and the excess-layer insurers,

24   payment for defense costs, damages, and other losses incurred and/or to be incurred in connection

25   with the litigation commenced by the GoldenTree Group (as defined below) alleging fraud, breach

26   of fiduciary duty and other claims, as well as in connection with related lawsuits.

27

28

GARMAN TURNER GORDON
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

2

7.      In addition to a declaration of their rights to coverage, the Insureds also seek damages for breach of contract against Illinois National for its failure to advance or pay defense costs to the Insureds.

8.      The Insureds seek damages, penalties, and attorneys' fees and costs from Illinois National as a result of its breach of the duty of good faith and fair dealing and violation of Nevada's Unfair Claims Settlement Practices Act, Nev. Rev. Stat. § 686A.310, in failing to provide coverage without a reasonable basis and its unreasonable failure to timely respond to the Insureds' requests for coverage.

9.      Finally, the Insureds seek an allocation between EBH and QXH of any damages or other amount awarded against Defendants in this litigation.

**Parties**

A.      **Plaintiffs.**

10.      Plaintiff **EB Holdings II, Inc.** ("EBH") is a corporation organized under the laws of Nevada with its principal office in Dallas, Texas.

11.      Plaintiff **QXH II, Inc.** ("QXH") is a corporation organized under the laws of Nevada with its principal office in Dallas, Texas.

B.      **Defendants.**

12.      Defendant **Illinois National Insurance Company** ("Illinois National") is an insurance company organized under the laws of Illinois with a principal place of business in New York, New York.  Illinois National is licensed to and does conduct business as an insurance company in Nevada.

13.      Defendant **Continental Casualty Company** ("Continental") is an insurance company organized under the laws of Illinois with a principal place of business in Chicago, Illinois.  Continental is licensed to and does conduct business as an insurance company in Nevada.

14.      Defendant **Federal Insurance Company** ("Federal") is an insurance company organized under the laws of Indiana with a principal place of business in Whitehouse Station, New Jersey.  Federal is licensed to and does conduct business as an insurance company in Nevada.

**Jurisdiction and Venue**

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and the Insureds are both citizens of states different from Defendants.

16.    Venue is proper pursuant to 28 U.S. Code § 1391 because all Defendants reside in this district and a substantial part of the events and omissions giving rise to the Insureds' claims occurred in this district.

**Facts Applicable to All Causes of Action**

**A.    The GoldenTree Action.**

17.    In 2007, EBH's corporate predecessor borrowed €600 million from Credit Suisse International ("Credit Suisse") and Citibank, N.A. ("Citibank," and together with Credit Suisse, the "PIK Lenders") pursuant to a payment-in-kind term loan documented by a PIK Loan Agreement dated March 23, 2007 (the "PIK Loan").

18.    Despite being originated at the height of the 2007 credit bubble, the PIK Loan provided for an 11% coupon. In exchange, EBH bargained for maximum repayment flexibility and a borrower-favorable covenant structure.

19.    Following the origination of the PIK Loan, Credit Suisse evidently acquired Citibank's stake, becoming the sole PIK Lender. Thereafter, Credit Suisse transferred an indirect participation interest in the PIK Loan to a special-purpose Dutch entity known as Boats Investments (Netherlands, B.V.) ("BOATS"). BOATS then issued notes (the "Series 97 Notes") to allegedly qualified foreign institutional buyers which were collateralized by BOATS' participation interest in the PIK Loan.

20.    It was these collateralized instruments—not direct interests in the PIK Loan—that the distressed-focused hedge funds, ultimately led by GoldenTree Master Fund, Ltd. (collectively, the "GoldenTree Group"), purchased at an aggregate discount on the secondary market between 2009 and 2016.

21.    In 2013 and 2016, the GoldenTree Group undertook a pair of transactions intended to "collapse" the BOATS structure in order to transform the Series 97 noteholders into lenders under the terms of the PIK Loan to obtain for the noteholders recourse against EBH.

22.    Thereafter, but prior to the maturity of the PIK Loan, the GoldenTree Group—at the time representing holdings in excess of 50% of the interests in the PIK Loan—brought suit against EBH, Howard Meyers, and several individuals and affiliates in Clark County District Court, captioned *GoldenTree Master Fund, Ltd. et al. v. Howard M. Meyers et al.*, Case No. A-16-742507-B, which suit improperly accelerated the PIK Loan and was subsequently coordinated with a related suit captioned *EB Holdings II, Inc. v. GoldenTree Master Fund, Ltd. et al.*, Case No. A-16-745669-B (collectively, the "GoldenTree Action").

23.    The GoldenTree Group alleged that EBH and related defendant entities and individuals engaged in a scheme to defraud them of more than one billion euros.  The claims asserted in the GoldenTree Action were predicated upon the GoldenTree Group's extensive, but ultimately unsupportable fraudulent scheme allegations, including but not limited to, claims for fraud in the inducement, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

24.    The original complaint in the GoldenTree Action included claims against EBH and related entities and individuals, which was subsequently amended on September 9, 2016 to include additional plaintiffs.

25.    The amended complaint alleged, among other things, an incredible and ultimately unsupportable tale of a scheme by EBH, Howard Meyers, and others to defraud the GoldenTree Group into loaning funds to EBH.

26.    On December 15, 2016, an order granting in part and denying in part EBH's dismissal motion was entered, requiring the GoldenTree Group to re-plead their fraud claims with the requisite particularly and allege satisfaction of the conditions precedent to bringing suit.

27.    The GoldenTree Group filed their Second Amended Complaint on or about December 23, 2016, re-pleading their fraud claim and adding QXH as a defendant.

28.    The GoldenTree Group clarified their fraud-based contentions, alleging that the GoldenTree Group purchased the Series 97 Notes from July 27, 2009 through March 30, 2016 on

the secondary market in reliance on annual financial reports distributed by EBH's subsidiary that they contended included misrepresentations and omissions, which financial statements they alleged were adopted by EBH.

29.    The GoldenTree Group filed a Third Amended Complaint on or about August 14, 2017, after which extensive motion practice and discovery ensued before the Clark County District Court, as well as multiple appeals to the Nevada Supreme Court.

30.    On May 18, 2017, in conjunction with GLAS USA, LLC, the GoldenTree Group commenced an involuntary chapter 11 bankruptcy proceeding against EBH before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), being case number 17-12642-mkn, predicated effectively upon the same claims and allegations asserted in the GoldenTree Action.

31.    EBH promptly filed a Motion to Dismiss Involuntary Petition, or, in the Alternative, to Abstain, and Reservation of Rights Under 11 U.S.C. § 303(i).

32.    On December 15, 2017, the Bankruptcy Court entered an order granting EBH's request to abstain by staying the involuntary bankruptcy proceeding under section 303(b) of the Bankruptcy Code pending entry of a final judgment in the GoldenTree Action and denying EBH's request for dismissal without prejudice.

33.    The Bankruptcy Court's abstention order was appealed by GLAS USA LLC, which appeal was dismissed on April 24, 2018.

34.    Prior to an adjudication on the merits and as discussed above, a consensual resolution was reached that was consummated through *The Pre-Packaged Chapter 11 Plan of Reorganization of EB Holdings II, Inc. and Its Affiliate Co-Plan Proponent, EBT NewCo, LLC* (the "Plan").

35.    The GoldenTree Action and all related appeals were dismissed with prejudice in August 2019 and the involuntary bankruptcy case was dismissed with prejudice on October 1, 2019.

36.    The Plan was confirmed by entry of a confirmation order of the Bankruptcy Court on November 6, 2019 [ECF No. 109, in 19-16364-MKN].

**B.     The Insureds' Bankruptcy Court Adversary Proceeding Against Defendants.**

37.     On January 16, 2020, the Insureds filed a Complaint against Defendants in a Bankruptcy Court adversary action alleging the causes of action raised in this Complaint [ECF No. 1, in Adv. No. 20-01010-MKN].

38.     By Order dated June 26, 2020, the Bankruptcy Court granted Illinois National's Motion to Dismiss the Insureds' Complaint in the adversary action on jurisdictional grounds, with leave to amend [ECF No. 159, in Adv. No. 20-01010-MKN].

39.     On July 16, 2020, the Insureds filed an Amended Complaint [ECF Nos. 166, 167, in Adv. No. 20-01010-MKN].  Illinois National again moved to dismiss the Insureds' Amended Complaint on jurisdictional grounds on July 30, 2020 [ECF No. 167, in Adv. No. 20-01010-MKN]. Continental and Federal joined in Illinois National's motion.

40.     In its motion seeking dismissal, Illinois National argued that, if the adversary Bankruptcy Court adversary action were dismissed, "this case can be refiled in the U.S. District Court under diversity jurisdiction" [ECF No. 174, in Adv. No. 20-01010-MKN].

41.     On December 11, 2020, the Bankruptcy Court granted Illinois National's motion, and dismissed the adversary action [ECF No. 187, in Adv. No. 20-01010-MKN].   The order expressly stated that "**IT IS FURTHER ORDERED** that dismissal of this adversary proceeding for lack of subject matter jurisdiction is **without prejudice** to the Plaintiffs' pursuit of their claims, if any, in another court of competent jurisdiction." (emphasis in original)

**C.     The Policies.**

42.     The Defendants issued the following four primary and excess directors, officers and private company liability insurance policies (the "Policies"):

. . .

. . .

. . .

. . .

. . .

. . .

| Insurer | Policy Number | Policy Period | Limits/Layer |
|---------|---------------|---------------|--------------|
| Illinois National Insurance Company | 02-245-65-22 | 10/31/2015 - 11/01/2016 | $15,000,000 Primary |
| Continental Casualty Company | 425467175 | 10/31/2015 - 11/01/2016 | $10,000,000 excess of Primary |
| Illinois National Insurance Company | 02-245-71-16 | 10/31/2015 - 11/01/2016 | $10,000,000 excess of $25,000,000 |
| Federal Insurance Company | 8181-4853 | 10/31/2015 - 11/01/2016 | $15,000,000 excess of $35,000,000 |

43.     The Insureds are entities who are provided insurance rights under the terms of the Policies.

44.     Primary coverage is provided to the Insureds by Illinois National under policy number 02-245-65-22 (the "Primary Policy").

45.     Subject to its terms and conditions as set forth in more detail therein, the Primary Policy generally provides insurance to the Insureds for, *inter alia*, "Loss" that arises from a claim first made against them during the policy period for an actual or alleged "Wrongful Act."

46.     "Loss" is defined in the Primary Policy to include, *inter alia*, damages, judgments, settlements, as well as defense costs incurred by the Insureds.

47.     "Wrongful Act" is defined in the Primary Policy to include, *inter alia*, "any breach of duty, neglect, error, misstatement, misleading statement, omission or act" by the Insureds.

48.     The Primary Policy provides that, although Illinois National "does not assume any duty to defend," the Insureds have the right to tender the defense of a claim to Illinois National, and upon such tender, Illinois National is obligated to assume defense of a claim "even if such Claim is groundless, false or fraudulent."

49.     However, even where Illinois National has not assumed the defense of a claim, the Primary Policy nevertheless requires that, "in all events, [Illinois National] must advance Defense Costs payments pursuant to the terms herein, prior to the final disposition of a Claim."

50.     Furthermore, even where Illinois National neither assumes the Insureds' defense nor advances defense costs, it nevertheless must pay defense costs because defense costs are included within the "Loss" covered under the terms of the Primary Policy.

51.     The remaining Policies issued by the Defendants are "follow form" excess policies, which incorporate certain terms of Illinois National's Primary Policy, and which obligate the Defendant excess insurers to, *inter alia*, pay the Insureds' defense costs as covered "Loss" thereunder.

52.     True and correct copies of the Policies are attached hereto as Exhibits 1 to 4.

**D.      The Insurance Claims.**

53.     The GoldenTree Action asserts claims against the Insureds for alleged "Wrongful Acts" which are covered under the terms of the Policies.

54.     Illinois National was required to assume the defense of the Insureds in the GoldenTree Action, or to advance and pay the Insureds' defense costs, under the terms of the Primary Policy.

55.     The Insureds reported the GoldenTree Action to Illinois National and the other Defendants on or about September 2, 2016.

56.     The Insureds retained counsel to defend the GoldenTree Action and informed Illinois National of the retention of defense counsel on or about October 12, 2016.

57.     Illinois National failed to assume the Insureds' defense or to advance defense costs as required under the Primary Policy.

58.     The Insureds provided updates on the status of the GoldenTree Action to Illinois National, and submitted copies of defense counsel invoices for payment by Illinois National. Illinois National did not pay these invoices or advance any other defense costs to the Insureds.

59.     On August 17, 2017, more than eleven months after the Insureds first reported the GoldenTree Action to Illinois National, Illinois National issued a letter denying coverage of all claims reported by the Insureds, and declining to assume the Insureds' defense or advance and pay the Insureds' defense costs.

60.     On information and belief, all the Defendants besides Illinois National have made or will make determinations that their excess "follow form" policies do not provide coverage to the Insureds for the GoldenTree Action on the same grounds that Illinois National relies upon for its denial of coverage.

61.     To date, the Insureds have incurred substantial defense costs in connection with the GoldenTree Action and related litigation, including in excess of $30,000,000 in attorneys' fees and costs, the majority of which was paid by EBH, and the remainder, less than $8,000,000, paid by QXH.  Such attorneys' fees and costs continue to accrue.

E.     **Illinois National's Grounds for Denying Coverage for the GoldenTree Action.**

62.     In an attempt to avoid its contractual obligations, Illinois National has wrongfully asserted a number of purported defenses to coverage, including the following three principal arguments:

(a)     **Exclusion (j)** to the Primary Policy, an exclusion related to a "public offering of securities by the Company," bars the Insureds' claims for coverage for the GoldenTree Action;

(b)     **Endorsement #24** to the Primary Policy, a "specific entity" exclusion applying to claims against "Eco-Bat Technologies Ltd.," also bars coverage; and

(c)     to the extent the above two exclusions do not bar all coverage, **Endorsement #5** to the Primary Policy includes an "Antitrust Sublimit of Liability," which Illinois National contends caps any coverage for the GoldenTree Action at a maximum of $5,000,000.

63.     However, neither of the two exclusions nor the "Antitrust Sublimit" applies to the claims brought against the Insureds in the GoldenTree Action.

*Exclusion (j) - The "Public Offering" Exclusion*

64.     Exclusion (j) in the Primary Policy provides in relevant part:

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an

Insured ... (j) alleging, arising out of, based upon or attributable to any public offering of securities by the Company ... or alleging a purchase or sale of such securities subsequent to such public offering…

65.    The term "Company" is defined in the Primary Policy as "the Named Entity [QXH II, Inc.], any Subsidiary thereof."  Pursuant to Endorsement #4 of the Primary Policy, the term "Company" is also deemed to include eight specific entities, including EBH.

66.    The plaintiffs in the GoldenTree Action have asserted no securities claims against the Insureds, such as claims brought under the Securities Act of 1933 or the Securities Exchange Act of 1934, and the GoldenTree Action does not allege or involve any "public offering of securities by the Company" whatsoever.

67.    At issue in the GoldenTree Action is a loan facility extended to EBH by private lenders, Credit Suisse and Citibank.  As discussed above, after issuing the loan facility to EBH, Credit Suisse independently repackaged indirect interests in that facility into the Series 97 Notes which Credit Suisse, through BOATS, sold to qualified institutional foreign buyers.  Credit Suisse thereby shifted risk related to the loan facility off its balance sheet to the buyers of the Series 97 Notes.  The GoldenTree Group are foreign hedge fund investors who admitted in their Second and Third Amended Complaints that they subsequently purchased the Series 97 Notes in an international "secondary market" and not from any "public offering of securities by the Company."

68.    Accordingly, the claims in the GoldenTree Action do not involve a "*public offering of securities by the Company*" within the scope of Exclusion (j) (emphasis added).

69.    Because the claims in the GoldenTree Action do not arise out of "any public offering of securities by the Company," there also can be no alleged "purchase or sale of *such* securities subsequent to *such* public offering…" as referred to in the second clause of Exclusion (j) (emphasis added).

70.    Accordingly, Illinois National has improperly relied on Exclusion (j) to deny coverage to the Insureds for the claims brought against them in the GoldenTree Action.

. . .

. . .

*Endorsement #24 - The "Eco-Bat" Entity Exclusion*

71.     Endorsement #24 to the Primary Policy, titled "Specific Entity Exclusion (Claims Brought by or Against)," provides:

> SPECIFIC ENTITY EXCLUSION
>
> (CLAIMS BROUGHT BY OR AGAINST)
>
> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for any Loss in connection with any Claim(s) brought by or on behalf of or against (i) the entity(ies) listed below; or (ii) any director, officer, partner, management committee member, member of the Board of Managers or security holder of an entity listed below:
>
> 1.   Eco Bat Technologies Ltd.
>
> Provided, however, this exclusion shall not apply to any other majority owned Subsidiaries of QXH II, Inc or EB Holdings II, Inc.
>
> ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

72.     Eco-Bat Technologies Ltd. ("Eco-Bat") is a company organized under the laws of the United Kingdom.  Eco-Bat was separately named as a defendant in the GoldenTree Action and was represented by separate defense counsel.  Eco-Bat was dismissed from the GoldenTree Action on jurisdictional grounds in January 2017.

73.     The Insureds in this action are not seeking coverage for any amounts that Eco-Bat may have incurred to defend itself from claims it faced in the GoldenTree Action prior to its dismissal.

74.     Rather, the Insureds seek coverage for the GoldenTree Action claims as insured persons and entities under the Primary Policy to whom Illinois National expressly agreed to provide coverage.   The Insureds are not excluded persons or entities under the terms of Endorsement #24.

75.     Illinois National contends that coverage for the Insureds is barred by the second clause of Endorsement #24, which excludes coverage of any "[l]oss in connection with any Claim(s) brought … against … (ii) any … *security holder* of [Eco-Bat]" (emphasis added).

Specifically, Illinois National argues that coverage for the entire GoldenTree Action as to all Insureds is barred because EBH maintains an ownership interest in Eco-Bat. This is incorrect for a number of reasons, all of which were or should have been clear to Illinois National at the time it denied coverage.

76.    First, the term "security holder," which Illinois National did not define in the Primary Policy, cannot be fairly or reasonably interpreted to apply to a parent company of Eco-Bat, such as EBH, as EBH was expressly added as an Insured by Endorsement #4. Illinois National's interpretation of "security holder" would eliminate all coverage for EBH—contrary to the clear intent of Endorsement #4.

77.    Second, even if EBH is considered a "security holder" of Eco-Bat for the purposes of Endorsement #24, the subsequent "carve-back" language of Endorsement #24 expressly states that the exclusion "shall not apply to any other majority owned Subsidiary of QXH II, Inc. *or EB Holdings II, Inc.*" (emphasis added). The limiting phrase "majority owned Subsidiary of" can only be read to modify QXH, and not EBH, because the Primary Policy defines the term "Subsidiary" to refer only to entities that are directly or indirectly owned "by the Named Entity" for the Primary Policy. Because the "Named Entity" is QXH and not EBH, the term "Subsidiary" can only refer to subsidiaries of QXH. Therefore, by its plain language, Endorsement #24 expressly states that it does not apply to EBH.

78.    Third, even if the phrase "majority owned Subsidiary" is deemed to modify both QXH and EBH, the carve-back language in Endorsement #24 still operates to preserve coverage for the claims against EBH in the GoldenTree Action. The claims against EBH involve not only allegations related to EBH's ownership of Eco-Bat, but also allegations related to at least eight indirect subsidiaries of EBH, including four—Eco-Bat America LLC, Quemetco West LLC, Eco-Bat Indiana LLC, and Eco-Bat New York LLC—that are expressly added as insured "Companies" under the Primary Policy (pursuant to Endorsement #4). Accordingly, the claims against EBH in the GoldenTree Action fall within the express carve-back language and are not excluded by Endorsement #24.

79.   <u>Fourth</u>, and finally, even if Endorsement #24 excluded coverage for any claims against EBH in the GoldenTree Action, it does not apply to claims against the other Insureds, as Illinois National's denial of coverage baselessly suggests.  QXH, the "Named Entity," is not a "security holder" of Eco-Bat, and Endorsement #24 does not apply to any claims against QXH.  Endorsement #24 also does not exclude claims against directors or officers of EBH or QXH—which are insured "Companies" under the Primary Policy.  The claims against Howard Meyers in the GoldenTree Action are brought in his capacity as a director and/or officer of, *inter alia*, EBH, QXH, and Quexco Incorporated, a subsidiary of QXH.  Accordingly, the claims against Mr. Meyers in the GoldenTree Action are not barred by Endorsement #24.

80.   For these reasons, Illinois National improperly relied on Endorsement #24 to deny coverage to the Insureds for the claims in the GoldenTree Action.

***Endorsement #5 - Antitrust Coverage Endorsement***

81.   Endorsement #5 to the Primary Policy provides:

ANTITRUST COVERAGE ENDORSEMENT

(SEPARATE SUBLIMIT, RETENTION AND CO-INSURANCE)
(D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1. In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, [Exclusion (q)(2)] is deleted in its entirety.

\* \* \*

5. Solely with respect to the coverage provided by this endorsement for Antitrust Claims, Clause 2. "DEFINITIONS" of the D&O Coverage Section is amended by adding the following Definition to the end thereof:

(AC-1) "Antitrust Claim" means any Claim alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, including any violation of the Sherman Antitrust Act, the Clayton Act, the Robinson-Patman Act or any similar federal, state or local statutes or rules. "Antitrust Claim" also means any Claim alleging, arising out of, based upon or attributable to, or in any way

involving, either directly or indirectly, any actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities:  business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

82.     Illinois National wrongly contends that all the claims against the Insureds in the GoldenTree Action (to the extent not otherwise excluded) are subject to Endorsement #5's $5,000,000 "Antitrust Claim" sublimit because they include allegations related to anticompetitive price fixing in Europe.

83.     Illinois National misconstrues Endorsement #5, which must be understood in the context of the Primary Policy as a whole, including Exclusion (q)(2)—the antitrust exclusion in main body of the Primary Policy.

84.     Exclusion (q)(2) excludes coverage for:

any actual or alleged violation of any law, whether statutory, regulatory, or common law, respecting any of the following activities:   anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

85.     By its terms, Exclusion (q)(2) applies only to Coverage B(i)—i.e., to claims brought directly against an insured Company.  Exclusion (q)(2) does not apply to Coverage A, which provides coverage to individual directors or officers, or to Coverage B(ii), which provides coverage to an insured Company that has indemnified an individual director or officer with respect to claim against that individual.

86.     The claims in the GoldenTree Action are not barred by Exclusion (q)(2) for at least two independent reasons.

87.     First, Exclusion (q)(2) only applies to claims made against an Insured alleging competitive harm.  Although the allegations in the GoldenTree Action make reference to price fixing that allegedly took place in Europe, the GoldenTree Group—hedge funds with alleged

interests in the debt of EBH—are not making claims against any Insured for "any actual or alleged violation of any law" regarding antitrust, business competition or unfair trade practices, or tortious interference, as would be required for Exclusion (q)(2) to apply.

88.    Second, because Exclusion (q)(2) does not apply to Coverage A or Coverage B(ii), it does not apply to claims in the GoldenTree Action against individual insureds (such as Mr. Meyers), or to amounts EBH or QXH have incurred to indemnify an individual insured.

89.    Endorsement #5 was added to the Primary Policy to expand the scope of coverage to claims that would otherwise be covered by Exclusion (q)(2).  Endorsement #5 makes this purpose clear by stating that the definition of "Antitrust Claim" of 'applies "[s]olely with respect to the coverage *provided by* this endorsement…" (emphasis added).

90.    As set forth above, the claims in the GoldenTree Action would not have been barred by Exclusion (q)(2) even if Endorsement #5 had never been adopted.  Accordingly, coverage of the claims brought against the Insureds in the GoldenTree Action was not "provided by" Endorsement #5's deletion of Exclusion (q)(2), and therefore, the "Antitrust Claim" sublimit relied on by Illinois National is entirely inapplicable.

91.    For these reasons, Illinois National improperly relied on Endorsement #5 to assert that any coverage provided to the Insureds for the claims asserted in GoldenTree Action would be subject to the $5,000,000 antitrust sublimit.

92.    Moreover, even if the $5,000,000 antitrust sublimit were applicable to some or all of the GoldenTree Action claims (and it is not), Illinois National has still breached its obligations by failing to advance and pay the Insureds' defense costs.

**F.    Illinois National Reaffirms Its Denial of Coverage.**

93.    On June 21, 2018, representatives of Marsh, the insurance broker involved in the placement of the Policies, met with representatives of Illinois National and explained why Illinois National had wrongfully denied coverage on the basis of the foregoing provisions.

94.    Marsh provided Illinois National with copies of documents related to the loan facility and Series 97 Notes that further demonstrated the inapplicability of Illinois National's

defenses to coverage, and engaged in subsequent discussions seeking to have Illinois National change it position and fulfill its coverage obligations to the Insureds.

95.    Nevertheless, Illinois National has stood by its denial of coverage and has persisted in refusing to advance and pay any defense costs in connection with the GoldenTree Action on the basis of the above-described coverage defenses.

### Causes of Action

#### Count One:  Declaratory Judgment
#### (Against All Defendants)

96.    The Insureds incorporate the preceding paragraphs by reference.

97.    An actual, judiciable controversy exists as to the scope of the Insureds' rights and the Defendants' obligations under the Policies for the GoldenTree Action and related litigation.  In particular, the Insureds contend that the GoldenTree Action asserts claims for alleged "Wrongful Acts" for which the Insureds are entitled to coverage under the Policies, including the assumption of the Insureds' defense or advancement or payment of defense costs, subject to the limits of liability of the Policies.  Upon information and belief, the Defendants dispute one or more of the aforementioned contentions of the Insureds.

98.    All pertinent conditions precedent to the Insureds' claims for relief have been performed or have occurred, or alternatively, all conditions precedent have been waived, excused, or do not need to be performed because the Defendants would not be prejudiced by such non-performance.

99.    The Insureds have been damaged by the Defendants' refusal to confirm coverage and satisfy their defense obligation for the GoldenTree Action and related litigation.

100.    Declaratory relief will help resolve the dispute between the Insureds and the Defendants.

101.    Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 *et seq.*, the Insureds are entitled to declaratory relief establishing the Defendants' obligations to provide coverage for the GoldenTree Action and related litigation and hereby request that this Court make the following declarations:

a.    Illinois National is obligated under the Primary Policy to defend, or advance and pay defense costs to the Insureds, and to pay other amounts that the Insureds may incur as Loss, including in settlement or judgment, with respect to the claims against the Insureds in the GoldenTree Action and related litigation; and

b.    Defendants (including Illinois National) who issued excess Policies are obligated to advance and pay defense costs to the Insureds, which defense costs shall be allocated between EBH and QXH in accordance with the amount advanced by each party. and to pay other amounts that the Insureds may incur as Loss, including in settlement or judgment, with respect to the claims against the Insureds in the GoldenTree Action and related litigation, upon exhaustion of the applicable underlying Policies.

### Count Two:  Breach of Contract
### (Against Illinois National)

102.    The Insureds incorporate the preceding paragraphs by reference.

103.    As set forth more fully above, the GoldenTree Action and related litigation asserts claims against the Insureds that are covered under the terms of the Policies.

104.    Pursuant to the terms of the Primary Policy, Illinois National has an obligation to provide insurance for Loss arising from the GoldenTree Action and related litigation, including advancement or payment of defense costs.

105.    The Insureds notified Illinois National of the GoldenTree Action and related litigation and submitted defense costs to Illinois National for payment.

106.    Illinois National's denial of coverage and failure to assume the Insureds' defense or advance and pay defense costs in connection with the GoldenTree Action and related litigation constitutes a breach of its obligations under the Primary Policy.

107.    As the direct result of Illinois National's breach of its obligations under the Primary Policy, the Insureds have sustained damages in the form of unreimbursed defense costs that to date are in excess of $30,000,000.

108.    The majority of these damages were paid by EBH, and the remainder, less than $8,000,000, paid by QXH.

109.    The awarded damages against Defendants must be allocated between QXH and EBH.

### Count Three:  Breach of Duty of Good Faith and Fair Dealing
### (Against Illinois National)

110.    The Insureds incorporate the preceding paragraphs by reference.

111.    Illinois National owes a duty of good faith and fair dealing to the Insureds in connection with its contractual obligations under the Primary Policy.

112.    The Insureds reported the GoldenTree Action to Illinois National on or about September 2, 2016, provided copies of pleadings and other information requested by Illinois National, and subsequently submitted copies of defense counsel invoices in the GoldenTree Action for payment by Illinois National.

113.    Based on the information in Illinois National's possession and/or provided by the Insureds, it was, or should have been, clear to Illinois National that the Insureds' claims were covered by the Primary Policy, and that Illinois National would therefore be required to advance and pay defense costs in the GoldenTree Action and related litigation.  No reasonable insurer would have failed to provide coverage to the Insureds with the information available to Illinois National at the time that Illinois National failed to provide coverage for the GoldenTree Action.

114.    Despite the fact that Illinois National knew or should have known that the Insureds' claims were covered by the Primary Policy, Illinois National nevertheless acted unreasonably, and with knowledge that there was no reasonable basis for its conduct, by denying coverage and ailing to advance and pay defense costs, or any portion thereof, to the Insureds.

115.    Moreover, Illinois National did not issue its formal denial of coverage until August 17, 2017—11 months after the Insureds reported their claims to Illinois National, and long after Illinois National knew or should have known that the Insureds' claims were covered by the Primary Policy based on the information in its possession and/or provided by the Insureds.

116.    Illinois National's complete failure to provide a prompt, fair, and equitable settlement of the Insureds' claims, when it knew or should have known that those claims were covered by the Primary Policy, constitutes a violation of Illinois National's duty under Nevada law to deal fairly and in good faith with the Insureds.

117.    For Illinois National's breaches of the duty of good faith and fair dealing, the Insureds are entitled to compensatory damages, including all forms of loss resulting from Illinois National's bad faith, such as additional costs, consequential loss, economic hardship, and exemplary damages.

118.    The damages awarded against Defendants must be allocated between QXH and EBH as they suffered separate damages as a result of Illinois National's breach of its duty of good faith and fair dealing.

**Count Four:  Violation of Nevada Unfair Claims Settlement Practices Act,**
**Nev. Rev. Stat. § 686A.310**
**(Against Illinois National)**

119.    The Insureds incorporate the preceding paragraphs by reference.

120.    Based on the information in Illinois National's possession and/or provided by the Insureds during the course of Illinois National's investigation of the Insureds' claims it was, or should have been, clear to Illinois National that the Insureds' claims were covered by the Primary Policy, and that Illinois National would therefore be required to advance and pay defense costs in the GoldenTree Action and related litigation.  No reasonable insurer would have failed to provide coverage to the Insureds with the information available to Illinois National at the time that Illinois National failed to provide coverage for the GoldenTree Action and related litigation.

121.    Despite the fact that Illinois National knew or should have known that the Insureds' claims were covered by the Primary Policy, Illinois National denied coverage in a letter dated August 17, 2017 and has refused to advance or pay defense costs, or any portion thereof, to the Insureds.

122.    Illinois National's failure to provide a prompt, fair, and equitable settlement of the Insureds' claims, when it knew or should have known that it was reasonably clear that those claims were covered by the Primary Policy, constitutes a violation of Nevada's Unfair Claims Settlement

Practices Act, Nev. Rev. Stat. § 686A.310, which provides that it is an unfair practice of an insurer to, *inter alia*, fail to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

123.    As a result of its violations of the Unfair Claims Settlement Practices Act, Illinois National is liable to the Insureds for all damages sustained by the Insureds as a result of thereof, which award of damages must be allocated between QXH and EBH.

### Prayer for Relief

WHEREFORE the Insureds request that this Court enter judgment in their favor and award the following relief against the Defendants:

a.    actual damages;

b.    consequential and incidental damages;

c.    treble and exemplary damages;

d.    reasonable and necessary attorneys' fees;

e.    costs of court;

f.    prejudgment and post-judgment interest at the highest lawful rate;

g.    an allocation between EBH and QXH of the amounts awarded against Defendants pursuant to paragraphs a through f above; and

h.    all other appropriate relief the Court deems justified.

Dated this 11th day of December, 2020.

Respectfully submitted,

GARMAN TURNER GORDON LLP                GHANDI DEETER BLACKHAM

By: */s/ Talitha Gray Kozlowski*                By: */s/ Shara L. Larson*
GREGORY E. GARMAN, ESQ.                SHARA L. LARSON, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.        725 S. 8th Street, Suite 100
TERESA M. PILATOWICZ, ESQ.            Las Vegas, Nevada 89101
DYLAN CICILIANO, ESQ.
7251 Amigo Street, Suite 210                K&L GATES LLP
Las Vegas, Nevada 89119                THOMAS E. BIRSIC, ESQ.
                                        (will comply with LR IA 11-2 within 7 days)
*Attorneys for EB Holdings II, Inc.*            PAUL C. FUENER, ESQ.
                                        (will comply with LR IA 11-2 within 7 days)
                                        K&L Gates Center

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

210 Sixth Avenue
Pittsburgh, Pennsylvania 15222

*Attorneys for QXH II, Inc.*

**GARMAN TURNER GORDON**
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

22