# EXHIBIT 1

# EXHIBIT 1

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.



## Illinois National Insurance Company

A capital stock company

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

**PrivateEdge®**

---

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

POLICY NUMBER: *02-245-65-22*          REPLACEMENT OF POLICY NUMBER: *01-701-09-70*

## DECLARATIONS

ITEM 1.     NAMED ENTITY:     *QXH II, INC.*

MAILING ADDRESS:     *C/O RSR CORPORATION*
*2777 STEMMONS FWY; STE 1800*
*DALLAS, TX 75207*

STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:
*Nevada*

ITEM 2.     SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Entity

ITEM 3.     POLICY PERIOD:     From: *October 31, 2015*     To: *November 1, 2016*
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.     LIMIT OF LIABILITY:     *$15,000,000*
aggregate for all Loss combined (including Defense Costs)

*22441*

68461 (8/97)                    1                    ℗ All rights reserved.

ITEM 5.     RETENTION:

Judgments, Settlements and
Defense Costs (non- Indemnifiable Loss)          None

Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*N/A*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Security Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$250,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)

*$250,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

ITEM 6.     CONTINUITY DATES:

A.     Coverages A and B(ii):          *October 31, 1975*

B.     Coverage B(i):          *October 31, 1975*

C.     Outside Entity Coverage: Per Outside Entity,
                    see endorsement #  *20*

ITEM 7.     PREMIUM: *$131,224*

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance
Act, as amended (TRIA):$1,299 included in policy premium. Any
coverage provided for losses caused by an act of terrorism as defined by TRIA
(TRIA Losses) may be partially reimbursed by the United States under a formula
established by TRIA as follows: 85% of TRIA Losses in excess of the insurer
deductible mandated by TRIA, the deductible to be based on a percentage of the
insurer's direct earned premiums for the year preceding the act of terrorism.*

*A copy of the TRIA disclosure sent with the original quote is attached hereto.*
*22441*

68461 (8/97)                              2                    ℗ All rights reserved.

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND
MULTIPLIED DAMAGES:  *$12,918*          (included in above ☒ )
(No punitive damages coverage provided: ☐ )


ITEM 8.     NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
            (This policy is issued only by the insurance company indicated below.)

            *Illinois National Insurance Company*

            *175 Water Street*

            *New York, NY 10038-4969*

*22441*

                           © All rights reserved.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

—————————————
PRESIDENT

—————————————
SECRETARY

—————————————
AUTHORIZED REPRESENTATIVE

—————————————   —————————   ————————————————
COUNTERSIGNATURE          DATE                COUNTERSIGNED AT

*MARSH USA INC.*
*540 WEST MADISON STREET*
*CHICAGO, IL 60661*

*22441*

68461 (8/97)

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *QXH II, INC.*

Policy Number: *02-245-65-22*
Policy Period Effective Date From: *October 31, 2015*      To: *November 1, 2016*

© 2015 National Association of Insurance Commissioner



# Illinois National Insurance Company

A capital stock company

### DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY

### Including Employment Practices and Securities Liability

## PrivateEdge®

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows:

### 1. INSURING AGREEMENTS

#### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

#### COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

    (i)    Claim first made against the Company, or

    (ii)    Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

#### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

### 2. DEFINITIONS

(a)    "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

 ® All rights reserved.

(b)   "Claim" means:

    (1)   a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

    (2)   a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

        (i)   service of a complaint or similar pleading; or

        (ii)   return of an indictment (in the case of a criminal proceeding); or

        (iii)   receipt or filing of a notice of charges.

    (3)   an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.  However, in no event shall the term "Claim" include any labor or grievance proceeding  which is subject to a collective bargaining agreement.

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(c)   "Company" means the Named Entity and any Subsidiary thereof.

(d)   "Continuity Date" means the date set forth in:

    (1)   Item 6A of the Declarations with respect to Coverages A and B(ii); or

    (2)   Item 6B of the Declarations with respect to Coverage B(i); or

    (3)   Item 6C of the Declarations with respect to a Claim made against an Individual Insured(s) arising  out of such Insured's  service as a director, officer, trustee or governor of an Outside Entity.

(e)   "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)   "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(g)   "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

            2             © All rights reserved.

(h)   "Employment Practices Violation(s)" means any actual or alleged:

(1)   wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2)   harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3)   discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4)   Retaliation (including lockouts);

(5)   employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;

(6)   employment-related libel, slander, humiliation, defamation, invasion of privacy;

(7)   wrongful failure to employ or promote;

(8)   wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9)   wrongful discipline;

(10)  failure to grant tenure;

(11)  failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation; or

(12)  violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)   "Individual Insured(s)" means:

(1)   any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

(2)   any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

(3)   in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

(4)   any Employee(s) of the Company.

                        Ⓡ All rights reserved.

(j)   "Insured(s)" means:

  (1)   an Individual Insured; and

  (2)   the Company.

(k)   "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.  If an additional premium is not stated in Item 7 of the Declarations then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(l)   "Named Entity" means the organization stated in Item 1 of the Declarations whether a corporation, association, limited liability company or other type of business organization.

(m)   "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(n)   "Outside Entity" means:

  (1)   a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

  (2)   any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(o)   "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(p)   "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts.  Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(q)   "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign

4 © All rights reserved.

law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(r)     "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

    (1)     brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

    (2)     brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

(s)     "Subsidiary" means:

    (1)     any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

    (2)     automatically any for-profit organization whose securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

    (3)     an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above), but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than a 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

© All rights reserved.

(t)     "Wrongful Act" means:

(1)     with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company;

(2)     with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company; and

(3)     with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

## 3.  EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)     arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)     arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;

(c)     arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

                              Ⓡ All rights reserved.

(d)     alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)     alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice,  or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative  or regulatory  proceeding  or investigation;

(f)     alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)     for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

(h)     alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(i)     which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

    (1)     any Claim brought by an Individual Insured where such Claim is in the form of a cross- claim or third- party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

    (2)     an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director,  member of the  Board of Managers  or management committee member of the Named Entity;

(j)     alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

    (1)     any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

    (2)     to any public offering of securities (other than a public offering described in paragraph (1) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within 30 days prior to the effective time of  such public offering: (i) the Named Entity shall give the

© All rights reserved.

Insurer written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium.  In the event the Company gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

(k)     alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(l)     alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly,  bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this  exclusion  shall  not apply  to Securities Claims;

(m)     for emotional distress, or for injury from libel or slander, or defamation or disparagement,  or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(n)     for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, this exclusion shall not apply to any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(o)     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(p)     alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemploy-ment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss arising from a Claim for Retaliation; or

(q)     with respect to Coverage B(i) only:

(1)     for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

(2)     for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti- trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

68462 (8/97)                                      8                              ℗ All rights reserved.

(3)     for the rendering or failure to render any service to a customer or client of the Insured; provided, however, that this exclusion shall not apply to any:

    (i)     Claim solely alleging Employment Practices Violations;

    (ii)    Securities Claim; or

    (iii)   Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this policy by written endorsement attached hereto; or

(4)     seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

**5.  LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)**

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.**

**A.    General Terms**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected).  Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations, or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

**B.    Reinstated Limit of Liability**

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations.  The Reinstated Limit shall be subject to the following conditions:

1.     The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events, only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2.     If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 7 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3.     The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy

                    Ⓒ All rights reserved.

Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

4.  The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in Clause 5A as applicable to Claims made against the Insureds prior to the effective date of the reinstatement shall not apply to any Reinstatement Claim.

5.  Upon exercise of the Reinstated Limit, the entire premium set forth in Item 7 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6.  In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7.  Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

The Retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defined in Clause 8, by the percentage described in Clause 8, subject to the conditions described in Clause 8.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1)  a determination of No Liability of all Insureds; or

(2)  a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re- brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

Ⓒ All rights reserved.

7.  **NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.**

**If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.  A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.**

(a)   The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

  (1)   anytime during the Policy Period or during the Discovery Period (if applicable); or

  (2)   within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)   If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging a Related Wrongful Act to the Claim for which such notice has been given shall be considered made at the time such notice was given.

(c)   If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

8.  **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The Insurer does not assume any duty to defend.  The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy.  Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim.  Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent.  The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8.  However, the Insurer shall not be obligated to defend such Claim after the

                    © All rights reserved.

Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.**

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

## 9.  PRE- AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS

This clause applies only to an Employment Practices Claim or a Securities Claim (each of the foregoing hereinafter referred to as a "Designated Claim").

© All rights reserved.

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Designated Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Designated Claim is brought. In the event a Designated Claim is brought in a jurisdiction not included on the appropriate list, the selection  shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non- Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Claim is brought to function as "local counsel" on the Designated Claim to assist the Panel Counsel Firm which will function  as "lead counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

10. **DISCOVERY CLAUSE**

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable.  This clause and the rights contained herein shall not apply to any cancellation resulting from non- payment of premium .

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such

                © All rights reserved.

longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide.  In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity.  In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL  OF NAMED ENTITY

If during the Policy Period:

   a.  the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

   b.  any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Named Entity, or acquires the voting rights of such an amount of such securities;

         (either of the above events herein referred to as the "Transaction"),

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Entity shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Entity shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, and the Company and the Insureds shall execute all papers required and shall do every-thing that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the

14                        © All rights reserved.

Company or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance. This policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of AIG Property Casualty Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to submit to the ADR process chosen by the Insured. Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

© All rights reserved.

There shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete,

© All rights reserved.

then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. (The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission rules or regulations promulgated pursuant to Section 16 of the Securities Exchange Act of 1934).

## 20. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 21. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

© All rights reserved.

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

   © All rights reserved.

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

ENDORSEMENT# *1*

This endorsement, effective at *12:01 a.m.   October 31, 2015*    forms a part of
Policy number   *02-245-65-22*
Issued to *QXH II, INC.*


By    *Illinois National Insurance Company*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDATORY ENDORSEMENT

**TEXAS**

This endorsement modifies insurance provided under the following:

PrivateEdge®

The policy is amended as follows:


In Clause 17. **DISPUTE RESOLUTION PROCESS,** the fourth paragraph is deleted in its entirety and replaced with the following:

> Either choice of ADR shall be commenced in the state of Texas; provided, however, that the Named Entity and the Insurer can mutually agree that either choice of ADR process shall be commenced in any of the following locations: New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or the state reflected in the Named Entity address. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 001***

108256 (2/11)                    Page 1 of 1

ENDORSEMENT# *2*

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of policy number  *02-245-65-22*
issued to *QXH II, INC.*

by     *Illinois National Insurance Company*

**TEXAS AMENDATORY ENDORSEMENT**
**CANCELLATION AND NONRENEWAL**

Wherever used in this endorsement: 1)"Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, or Named Insured stated in the declarations page; and 3) "Liability insurance" means the following types of insurance: general liability, professional liability other than medical professional liability, commercial multi-peril coverage, and any other types of lines of liability insurance designated by the State Board of Insurance.

It is hereby agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

**CANCELLATION AND NONRENEWAL**

A.     Cancellation

1.     This policy may be canceled by the Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

2.     Except as provided by subsection A.3. below, the Insurer may not cancel this policy if it is:

a)  a policy of liability insurance that is a renewal or continuation policy; or

b)  a policy of liability insurance that is in its initial policy period after the 60th day following the date on which the policy was issued.

3.     The Insurer may cancel this policy at any time during the term of the policy for the following reasons:

a)  fraud in obtaining coverage;

b)  failure to pay premiums when due;

c)  an increase in hazard within the control of the Insured or  Other Insured(s) which would produce an increase in rate;

d)  loss of the Insurer's reinsurance covering all or part of the risk covered by the policy; or

◊ All rights reserved.

*END 002*

**ENDORSEMENT#** *2* (continued)

e) the Insurer being placed in supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.

4. The Insurer shall deliver or mail to the Insured first named in the Declarations written notice of cancellation at the address shown on the policy not less than the 10th day before the date on which the cancellation takes effect. Such written notice shall state the reasons(s) for cancellation.

5. The Insurer may not cancel this policy based solely on the fact that the Insured is an elected official.

6. If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the condominium Property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured thirty (30) days before the effective date of cancellation. The Insurer will also provide thirty (30) days written notice to each unit-owner to whom the Insurer issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to the Insurer.

B. Nonrenewal

1. The Insurer may refuse to renew this policy by delivering or mailing to the Insured first named in the Declarations written notice of nonrenewal at the address shown on the policy. Such written notice shall state the reason(s) for nonrenewal. The notice must be delivered or mailed not later than the 60th day before the date on which the policy expires. If the notice is delivered or mailed later than the 60th day before the date on which the policy expires, the coverage shall remain in effect until the 61 day after the date on which the notice is delivered or mailed. If notice is delivered or mailed, proof of delivery or mailing will be sufficient proof of notice. Earned premium for any period of coverage that extends beyond the expiration date of the policy shall be computed pro rata based on the previous year's rates.

2. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

3. The Insurer may not refuse to renew this policy based solely on the fact that the Insured is an elected official.

4. If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the

© All rights reserved.

*END 002*

74802 (7/11)

<u>**ENDORSEMENT#**</u> *2*   (continued)

condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the Insurer will mail or deliver written notice of nonrenewal, at least thirty (30) days before the expiration or anniversary date of the policy, to:

a.      The first Named Insured; and

b.      Each unit-owner to whom the Insurer issued a certificate or memorandum of insurance.

The Insurer will mail or deliver such notice to each last mailing address known to the Insurer.

All other terms, conditions and exclusions of the policy shall remain unchanged.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

**_END 002_**

74802 (7/11)                                    3

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 a.m.   October 31, 2015*     forms a part of policy number  *02-245-65-22*
issued to *QXH II, INC.*

by     *Illinois National Insurance Company*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

    (1)   nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

    (2)   nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

    (3)   the furnishing by an Insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

    (4)   claims for damages to the company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.

    (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or,

    (2)   with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or byproduct material;

    "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

◈ All rights reserved.
*END 003*

**ENDORSEMENT#** *3*      (continued)

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

All rights reserved.
*END 003*

**ENDORSEMENT# 4**

This endorsement, effective  *12:01 a.m.   October 31, 2015*       forms a part of
policy number  *02-245-65-22*
issued to    *QXH II, INC.*

by    *Illinois National Insurance Company*

## ADDITIONAL ENTITY(IES) INCLUDED IN DEFINITION OF COMPANY

In consideration of the premium charged, it is hereby understood and agreed that the
Definition of Company is amended to include the following entity(ies):

| ENTITY(IES) | CONTINUITY DATE |
|---|---|
| 1.  EB HOLDINGS II, INC. | October 31, 1975 |
| 2.  Quexco Incorporated | October 31, 1975 |
| 3.  QX Holdings, LLC | October 31, 1975 |
| 4.  QX Holdings, Inc. | October 31, 1975 |
| 5.  Eco-Bat America LLC | October 31, 1975 |
| 6.  Quemetco West, LLC | October 31, 1975 |
| 7.  Eco-Bat Indiana, LLC | October 31, 1975 |
| 8.  Eco-Bat New York, LLC | October 31, 1975 |

For the purpose of the applicability of the coverage provided by this endorsement, the
entity(ies) listed above and the Company will be conclusively deemed to have indemnified
the Individual Insureds of the respective entity listed above to the extent that such entity
or the Company is permitted or required to indemnify such the Individual Insureds pursuant
to law, common or statutory, or contract, or its charter or by-laws. The entity(ies) and the
Company hereby agree to indemnify the Individual Insureds to the fullest extent permitted
by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that only with respect to the entity(ies) listed above the
Insurer shall not be liable for any Loss in connection with any Claim made against such
entity(ies) listed above or any Claim(s) made against any Individual Insured of such
entity(ies) listed above alleging, arising out of, based upon or attributable to, as of each
such entity(ies) respective Continuity Date listed above, any pending or prior: (1) litigation;
or (2) administrative or regulatory proceeding or investigation, or alleging any Wrongful Act
which is the same or Related Wrongful Act to that alleged in such pending or prior
litigation or administrative or regulatory proceeding or investigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                          *END 4*

This endorsement, effective *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

## ANTITRUST COVERAGE ENDORSEMENT
### (SEPARATE SUBLIMIT, RETENTION AND CO-INSURANCE)
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  In Clause 4. "EXCLUSIONS" of the **D&O Coverage Section**, paragraph (t)(ii) is
    deleted in its entirety.

2.  Clause 5. "LIMIT OF LIABILITY" of the **D&O Coverage Section** is amended by
    adding the following at the end thereof:

    **ANTITRUST SUBLIMIT of liability**

    The aggregate limit of the **Insurer's** liability for all **Loss** under this **D&O Coverage
    Section** arising from all **Antitrust Claims** is $5,000,000 (hereinafter called the "
    **Antitrust Sublimit of Liability**").  This **Antitrust Sublimit of Liability** shall be part of
    and not in addition to the **Policy Aggregate Limit of Liability** stated in the Item 7(a)
    of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability**
    applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

3.  Clause 6. "RETENTION/DEDUCTIBLE CLAUSE" of the **D&O Coverage Section** is
    amended by adding the following paragraphs at the end thereof:

    Notwithstanding the foregoing, with respect to any **Antitrust Claim** (as defined
    below), the **Insurer** shall only be liable for **Loss** arising from such **Antitrust Claim**
    which is in excess of a Retention amount of $1,000,000 (the " **Antitrust
    Retention**"), such **Antitrust Retention** to be borne by the **Company** and/or the
    **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and
    (ii) **Loss** of the **Company**. A single **Antitrust Retention** shall apply to **Loss** arising
    from all **Antitrust Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.
    In the event a **Claim** triggers more than one Retention amount under the policy, only
    the highest such amount shall apply, which amount shall apply to all **Loss** under
    such **Claim**.

4.  Solely with respect to **Antitrust Claims**, it is hereby understood and agreed that the
    following Clause is added to the end of the **D&O Coverage Section**:

99486 (06/08)                              *END 5*

**ENDORSEMENT# _5_     (Continued)**

This endorsement, effective *12:01 a.m.     October 31, 2015*      forms a part of
policy number   *02-245-65-22*
issued to    *QXH II, INC.*

by     *Illinois National Insurance Company*

### AC-1. COINSURANCE CLAUSE

With respect to: (1) **Indemnifiable Loss**; and/or (2) **Loss** of the **Company**, the **Insurer**
shall be liable  to pay  50% of  **Loss** excess  of the  applicable Retention amount,  it
being a condition of this insurance  that the remaining 50% of each  and every **Loss**
shall  be  carried  by  the  **Company**  and  the  **Insureds**  at  their  own  risk  and  be
uninsured.

5.     Solely  with  respect  to  the  coverage  provided  by  this  endorsement  for  **Antitrust
Claims**, Clause  2.  "DEFINITIONS"  of  the  **D&O Coverage Section**  is  amended  by
adding the following Definition to the end thereof:

(AC-1)  " **Antitrust Claim**" means any **Claim**  alleging, arising out  of, based  upon or
attributable to, or in any way involving, either directly or indirectly, antitrust
violations, including any violation of the Sherman Antitrust Act, the Clayton
Act, the Robinson-Patman Act or any similar  federal, state or local statutes
or rules.   " **Antitrust Claim**" also means  any **Claim** alleging,  arising out  of,
based upon  or attributable to,  or in  any way involving,  either directly  or
indirectly, any  actual  or alleged  violation of any  law,  whether statutory,
regulatory or common  law, with respect  to any of  the following activities:
business competition,  unfair  trade  practices  or   tortious  interference  in
another's business or contractual relationships.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

99486 (06/08)                    *END 5*

ENDORSEMENT# *6*

This endorsement, effective *12:01 a.m.   October 31, 2015*     forms a part of policy number  *02-245-65-22*
issued to *QXH II, INC.*

by   *Illinois National Insurance Company*

**CAPTIVE INSURANCE COMPANY**
**(WITH SPECIFIC CAPTIVE CARVE- OUT)**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payments for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, or attributable to the ownership, management, maintenance and/or control by the Company of any captive insurance company or entity including but not limited to Claim(s) alleging the insolvency or bankruptcy of the Company as a result of such ownership, operation, management and control.

Notwithstanding the above, this exclusion shall not apply to the captive insurance company listed below (hereinafter "Captive(s)"):

CAPTIVE INSURANCE COMPANY

*Environmental Service Insurance Company*

It is further understood and agreed that in regard to the Captive(s) listed above the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against the Insureds alleging, arising out of, based upon, or attributable to any third party business performed by or contracted into by the Captive(s) listed above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 006**

**ENDORSEMENT# 7**

This endorsement, effective  *12:01 a.m.    October 31, 2015*          forms a part of
policy number  *02-245-65-22*
issued to     *QXH II, INC.*

by     *Illinois National Insurance Company*

### CLAIM DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 2.
**DEFINITIONS**, is hereby amended by adding the following:

> The term "Claim" shall include a written "Wells" or other notice  from the Securities
> Exchange Commission or  similar state  or foreign  government authority  that
> identifies the Insured and  describes actual  or alleged  violations of law  by such
> Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                          *END 7*

**ENDORSEMENT#** *8*

This endorsement, effective *12:01 a.m.   October 31, 2015*        forms a part of
policy number  *02-245-65-22*
issued to *QXH II, INC.*

by     *Illinois National Insurance Company*

**DISCOVERY AMENDED**
**BILATERAL - PREMIUM PRESET**

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

Clause 10. DISCOVERY CLAUSE, is deleted in its entirety and replaced with the following:

**10.   DISCOVERY CLAUSE**

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy.  The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable.  This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be   *75* % of the "full annual premium"; (2) two shall be  *150* % of the "full annual premium"; or (3) three years shall be  *200* % of the "full annual premium".  As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ All rights reserved.
*END 008*

ENDORSEMENT# *9*

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of
policy number   *02-245-65-22*
issued to    *QXH II, INC.*

by      *Illinois National Insurance Company*

### E- DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
**Insured** shall have the option to elect coverage for **E-Discovery Consultant Services** (as
defined below). To provide such coverage, this policy is amended as follows:

1. Clause 1. **INSURING AGREEMENTS** is amended by adding the following insuring
agreement:

    **E-DISCOVERY CONSULTANT SERVICES COVERAGE**

    This policy shall pay the **E-Discovery Loss** of any **Insured** arising from a **Securities Claim**
    made against such **Insured** for any **Wrongful Act** of such **Insured**, that is commenced
    by:

    (i)      in the case of a civil proceeding, the service of a complaint or similar pleading;
    or

    (ii)      in the case of a criminal proceeding, the return of an indictment, information or
    similar document,

    and in which **E-Discovery** is required or becomes necessary.

    The **Insured** shall select a pre-approved **E-Consultant Firm** from the list provided in
    Section 6 of this endorsement at such time that the **Insured** is required, or it becomes
    necessary for the **Insured**, to respond to a discovery request or automatic disclosure
    requirement in such **Securities Claim** by means of **E-Discovery**.

    Coverage for **E-Discovery Loss**, up to the amount of the **E-Discovery Sub-limit of
    Liability**, shall be from first dollar, provided that payment of any **E-Discovery Loss** under
    this Insuring Agreement shall not waive any of the **Insurer's** rights under this policy or
    at law.

2. Clause 5. **LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL
LOSS-INCLUDING DEFENSE COSTS)** is amended by adding the following:

    **E-DISCOVERY SUB-LIMIT OF LIABILITY**

    Solely with respect to any **E-Discovery Loss** covered under Clause 1. INSURING
    AGREEMENTS, E-Discovery Consultant Services Coverage, the maximum limit of the
    **Insurer's** liability for all **E-Discovery Loss** in the aggregate arising from all **Securities
    Claims** covered thereunder combined shall be $25,000 (hereinafter the " **E-Discovery
    Sub-limit of Liability**"). This **E-Discovery Sub-limit of Liability** shall be part of and not in
    addition to the aggregate **Limit of Liability** stated in the Declarations and will in no way
    serve to increase the **Insurer's Limit of Liability** as stated therein.

**ENDORSEMENT#** *9*   **(Continued)**

This endorsement, effective   *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

**E-Discovery Consultant Services** shall conclude once such services are no longer required or necessary or when the **E-Discovery Sub-limit of Liability** has been exhausted, whichever comes first.

It is further understood and agreed that the coverage provided under Clause 1. INSURING AGREEMENTS, E-Discovery Consultant Services Coverage, shall not waive the **Insurer's** obligation to pay **Defense Costs** (inclusive but not limited to **Defense Costs** for **E-Discovery Consultant Services**) subject to all other terms, conditions and exclusions of this policy (including but not limited to Clause 6. RETENTION CLAUSE and Clause 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)).

3. Clause 8. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)** is amended by adding the following at the end thereof:

   The **Insured** shall be entitled to any preferred rates for **E-Discovery Consultant Services** negotiated by the **Insurer** with the **E-Consultant Firms** for all **E-Discovery Loss** and all **Defense Costs**.

4. Solely with respect to the coverage afforded by this endorsement, the following definitions shall apply:

   **DEFINITIONS**

   (a) " **E-Consultant Firm**" means any firm listed in Section 6 of this endorsement. Any " **E-Consultant Firm**" may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

   (b) " **E-Discovery**" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

   (c) " **E-Discovery Loss**" means the reasonable and necessary consulting fees for the **E-Discovery Consultant Services** provided solely to the **Insured(s)** by an **E-Consultant Firm**.

   Provided, however, **E-Discovery Loss** shall not include any costs of discovery other than **E-Discovery Loss**.

**ENDORSEMENT# *9*   (Continued)**

This endorsement, effective   *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

(d) " **E-Discovery Consultant Services**" means solely the following services performed
by an **E-Consultant Firm**:

1. assisting the **Insured** with managing and minimizing the internal and external
costs associated with **E-Discovery**;
2. assisting the **Insured** in developing or formulating an **E-Discovery** strategy which
shall include interviewing qualified and cost effective **E-Discovery** vendors;
3. serving as project manager, advisor and/or consultant to the **Insured**, defense
counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy;
and
4. such other services provided by the **E-Consultant Firm** that the **Insured**, **Insurer**
and **E-Consultant Firm** agree are reasonable and necessary given the
circumstances of the **Securities Claim**.

5. Clause 6. **RETENTION CLAUSE** is amended by adding the following at the end thereof:

No Retention amount is applicable **E-Discovery Loss** covered under Clause 1.
INSURING AGREEMENTS, E-Discovery Consultant Services Coverage.

6. **PRE-APPROVED E-CONSULTANT FIRMS**

Cliff Dutton, LLC

121 Benevolent Street

Providence, RI 02906

Contact: Cliff Dutton

Phone: 401-383-7172

E-Mail: cliff.dutton@cox.net

Encore Legal Solutions

5201 Great America Parkway, Suite 320

Santa Clara, CA 95054

Contact: Jim Ramsey

Phone: 925-735-7639

E-Mail: jramsey@encorelegal.com

ACT Litigation Services, Inc.

27200 Tourney Road, Suite 450

Valencia, CA 91355

Contact: Macyl Burke

Phone: 661-284-6401 Ext 318

E-Mail: mburke@actlit.com

Digital Mandate

68 South Service Road, Suite 100

Melville, NY 11747

Contact: Gregg Osinoff

Phone: 631-577-7944

E-Mail:

*END 9*

ENDORSEMENT# *9*     **(Continued)**

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of
policy number   *02-245-65-22*
issued to    *QXH II, INC.*

by    *Illinois National Insurance Company*

Protiviti

400 South Hope Street, Suite 900

Los Angeles, CA 90071

Contact: Frank Wu

Phone: 213-327-1509

E-Mail: frank.wu@protiviti.com

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                          *END 9*

**ENDORSEMENT#** *10*

This endorsement, effective *12:01 a.m.   October 31, 2015*        forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by     *Illinois National Insurance Company*

### EMPLOYMENT PRACTICES COVERAGE DELETED

In consideration of the premium charged, it is hereby understood and agreed that, notwithstanding any other provision of this policy (including any endorsement attached hereto, whether such endorsement precedes or follows this endorsement in time or sequence), this policy shall not provide coverage for Loss arising out of an Employment Practices Claim.   It is further agreed that all sections of the policy which relate to coverage for Employment Practices Claims are deleted in their entirety.

It is further understood and agreed that the policy is hereby amended as follows:

**I.**

Item 5. of the Declarations is deleted in its entirety and replaced with the following:

ITEM 5.     RETENTION:

| | |
|---|---|
| Judgments, Settlements and Defense Costs (non- Indemnifiable Loss) | None |
| Securities Claims (other than private placements) Judgments, Settlements and Defense Costs (Company and Indemnifiable Loss) | *$250,000* for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances) |
| All Other Claims (including private placements) Judgments, Settlements and Defense Costs (Company and Indemnifiable Loss) | *$250,000* for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances) |

**II.**

Clause 2. DEFINITIONS is amended as follows:

1.     Definition (b) "Claim" is amended by deleting subparagraph (3) in its entirety and deleting the final paragraph thereof and replacing it with the following:

The term "Claim" shall include a Securities Claim.

® All rights reserved.
**END 010**

**ENDORSEMENT#** *10*    (continued)

2.    Definition (t) "Wrongful Act" is amended by deleting the last sentence thereof, which reads as follows:

>    "With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation."

**III.**

Clause 4. EXCLUSIONS is amended as follows:

1.    Exclusions (h), (i), (m), (n) and (q) are amended by deleting all references to exceptions for Employment Practices Claims.

2.    Exclusions (o) and (p) are amended by deleting all references to exceptions for Claims for Retaliation.

3.    The following exclusion shall apply and is added at the end of Clause 4:

>    (r)    with respect to all Coverages: alleging an Employment Practices Violation(s).

**IV.**

Clause 9. PRE- AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS is amended by deleting the first sentence of the Clause and replacing it with the following:

>    "This clause applies only to a Securities Claim (hereinafter referred to as a "Designated Claim")."

**V.**

It is further understood and agreed that any reference(s) to an Employment Practices Claim or an Employment Practices Violation within the policy shall not operate to grant coverage for Loss alleging an Employment Practices Violation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◈ All rights reserved.
*END 010*

ENDORSEMENT# *11*

This endorsement, effective *12:01 a.m.   October 31, 2015*       forms a part of
policy number  *02-245-65-22*
issued to *QXH II, INC.*

by   *Illinois National Insurance Company*

### EXTRADITION COVERAGE

In consideration of the premium charged, it is understood and agreed that, where permitted by law:

1.  "Claim" also means any:

    (a)   official request for Extradition of any Individual Insured; or

    (b)   the execution of a warrant for the arrest of an Individual Insured where such execution is an element of Extradition.

2.  "Defense Costs" also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the Insurer resulting from an Individual Insured lawfully:

    (a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the Extradition of that Individual Insured; or

    (b)   appealing any order or other grant of Extradition of that Individual Insured.

3.  "Extradition" means any formal process by which an Individual Insured located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.  Clause 9 does not apply to Defense Costs solely relating to Extradition even if the underlying Wrongful Acts relate to a Securities Claim.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 011*

ENDORSEMENT# *12*

This endorsement, effective *12:01 a.m.  October 31, 2015*      forms a part of
policy number *02-245-65-22*
issued to   *QXH II, INC.*

by    *Illinois National Insurance Company*

### FINAL ADJUDICATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
Exclusions (a), (b) and (c) are deleted in their entirety and replaced with the following:

(a)    arising out of, based upon or attributable to the gaining of any profit or
        advantage to which any judgment or final adjudication adverse to the
        Insured(s) establishes the Insured(s) were not legally entitled;

(b)    arising out of, based upon or attributable to: (1) the purchase or sale by an
        Insured of securities of the Company within the meaning of Section16(b) of
        the Securities Exchange Act of 1934 and amendments thereto or similar
        provisions of any state statutory law if any judgment or other final
        adjudication adverse to the Insured(s) establishes that such 16(b) violation
        occurred; or (2) the payment to any Insured(s) of any remuneration without
        the previous approval of the stockholders of the Company, if any judgment
        or other final adjudication adverse to the Insured(s) establishes such payment
        to be illegal;

(c)    arising out of, based upon or attributable to the committing of any criminal,
        fraudulent or dishonest act, or any willful violation of any statute, rule or
        law, if any judgment or final adjudication adverse to the Insured(s)
        establishes that such criminal, fraudulent, dishonest act or willful violation of
        any statute, rule or law occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                              *END 12*

ENDORSEMENT# *13*

This endorsement, effective *12:01 a.m.   October 31, 2015*   forms a part of
policy number *02-245-65-22*
issued to *QXH II, INC.*

by *Illinois National Insurance Company*

**INDIVIDUAL INSURED(S) DEFINITION AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that coverage
as is afforded by this policy is extended and the Definition of "Individual Insured(s)" is
amended to include the following position(s), but solely for Wrongful Acts committed in his
or her respective capacity(ies) in the position(s) listed below and subject to the specified
Continuity Date:

| POSITION | CONTINUITY DATE |
|----------|-----------------|
| Advisory Board Members | 10/31/2014 |

Furthermore, provided that for the purpose of the applicability of the coverage provided by
this endorsement, the Company will be conclusively deemed to have indemnified the
persons afforded coverage by this endorsement to the extent that the Company is
permitted or required to indemnify them pursuant to law, common or statutory, or
contract, or the charter or by-laws of the Company. The Company hereby agrees to
indemnify such persons to the fullest extent permitted by law, including the making in
good faith of any required application for court approval.

It is further understood and agreed that only as respects any additional coverage granted
by virtue of this endorsement the Insurer shall not be liable for any Loss in connection with
any Claim(s) made against an Insured:

(1) alleging, arising out of, based upon or attributable to any pending or prior
litigation as of each individual's respective Continuity Date listed above, or
alleging or derived from the same or essentially the same facts as alleged in
such pending or prior litigation; and

(2) alleging any Wrongful Act occurring prior to each individual's respective
Continuity Date if the Insured knew or could have reasonably foreseen that
such Wrongful Act could lead to a Claim under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

M120388 (09/15)                *END 13*

**ENDORSEMENT# *14***

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of
policy number  *02-245-65-22*
issued to    *QXH II, INC.*

by    *Illinois National Insurance Company*

## INDIVIDUAL INSURED(S) DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that coverage as is afforded by this policy is extended and the Definition of "Individual Insured(s)" is amended to include any individual(s) serving in the following position(s), but solely for Wrongful Acts committed in his or her respective capacity described below and subject to the specified Continuity Date:

**<u>CAPACITY</u>**

COMPTROLLER

Furthermore, provided that for the purpose of the applicability of the coverage provided by this endorsement, the Company will be conclusively deemed to have indemnified the persons afforded coverage by this endorsement to the extent that the Company is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the Company.  The Company hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that only as respects any additional coverage granted by virtue of this endorsement the Insurer shall not be liable for any Loss in connection with any Claim(s) made against an Insured:

     (1)    alleging, arising out of, based upon or attributable to any pending or prior litigation as of each individual's respective Continuity Date listed above, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation; and

     (2)    alleging any Wrongful Act occurring prior to each individual's respective Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                                    ***END 14***

ENDORSEMENT# *15*

This endorsement, effective *12:01 a.m.    October 31, 2015*          forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by     *Illinois National Insurance Company*

### INSURANCE COMPANY ERRORS & OMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) or the Company alleging, arising out of, based upon or attributable to any one or more of the following:

(a)    any refusal to renew or any cancellation of any policy of insurance, reinsurance, bonds or indemnity, including but not limited to, annuities, endowments, pension contracts and risk management self-insurance programs, pools or similar programs (hereinafter collectively referred to as "Insurance Contract");

(b)    any failure or refusal to pay, or delay in the payment of, benefits due or alleged to have been due under any Insurance Contract;

(c)    any lack of good faith or fair dealing in the handling of any Claim or obligation arising out of or under any Insurance Contract.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
**END 015**

ENDORSEMENT# *16*

This endorsement, effective  *12:01 a.m.   October 31, 2015*        forms a part of
policy number  *02-245-65-22*
issued to    *QXH II, INC.*

by      *Illinois National Insurance Company*

### INSURED V. INSURED EXCLUSION AMENDATORY ENDORSEMENT

In consideration of the premium  charged, it is hereby  understood and  agreed that
**EXCLUSIONS**, section (i) is deleted in its entirety and replaced with the following:

(i)      which is brought by any Insured  or by the Company; or  which is brought by
any security holder of the  Company, whether directly or  derivatively, unless
such security holder's Claim  is instigated and  continued totally independent
of, and  totally  without  the solicitation of, or  assistance of, or  active
participation of, or intervention of, any Insured;  provided, however, this
exclusion shall not apply to:

(1)      any Claim brought by an Individual Insured where such Claim is in  the
form of a cross-claim or third-party claim for contribution or indemnity
which  is  part  of and  results directly from a Claim  which  is  not
otherwise excluded by the terms of this policy;

(2)      an Employment Practices Claim brought by  an Employee of the
Company other than an  Employee who is or  was a director,  member
of the Board of  Managers or management committee  member of the
Named Entity;

(3)      in any  bankruptcy proceeding  by or  against  a Company, any Claim
brought by the  examiner, trustee,  receiver, liquidator  or rehabilitator
(or any assignee thereof) of such Company, if any;

(4)      any Claim  brought  by  any  past  director, officer,  management
committee member or member of  the Board of  Managers  of a
Company, who has not served as a duly elected or appointed director,
officer, management committee  member or member  of the Board  of
Managers (or equivalent  position) of or  consultant to a  Company for
at least three  (3) years prior  to such  Claim being first  made against
any person; or

(5)      any Director  or Officer  engaging in any  protected  "whistleblower"
activity  specified  in  18  U.S.C.  1514A(a)  or  any  other  similar
"whistleblower" protection provided under  any state, local  or foreign
securities laws.

ENDORSEMENT# *16*   (Continued)

This endorsement, effective *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

This exception to Exclusion 4(i) shall not apply where the actions of any Director or Officer includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than *de minimus* assistance) in the filing or prosecution of any proceeding against an Insured relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a proceeding that is brought by the Securities and Exchange Commission, any similar state, local orforeign regulatory body that regulates securities, or any state, local or foreign law enforcement authority.

As used in this endorsement, the term "Director(s) or Officer(s)" means an Individual Insured as defined in subparagraphs (1), (2) or (3) of the definition of policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                                *END 16*

ENDORSEMENT# *17*

This endorsement, effective  *12:01 a.m.    October 31, 2015*       forms a part of
policy number   *02-245-65-22*
issued to    *QXH II, INC.*

by     *Illinois National Insurance Company*

### INSURED VS INSURED EXCLUSION AMENDED
### (FOREIGN SUBSIDIARIES)

In consideration of the premium charged, it is hereby understood and agreed that Exclusion (i) shall not apply to any Claim(s) which is brought: (1) by an individual director of a Foreign Subsidiary against a director of the same Foreign Subsidiary in his or her Capacity as such; (2) at the sole request of a shareholder(s) of said Foreign Subsidiary and not at the instigation or solicitation of the Company or any other Insured; or (3) because a statutory law in such Foreign Jurisdiction prohibits shareholders from bring such a Claim whether in the form of a class, derivative or direct action.

Notwithstanding the foregoing, the above paragraph shall only apply to a Claim(s): (1) brought in the Foreign Jurisdiction in which such Foreign Subsidiary is formed or incorporated; and (2) alleging a violation of law (common or statutory, including breaches of fiduciary duty) of such Foreign Jurisdiction.

It is further understood and agreed that, solely in regard to the coverage provided by this endorsement, the maximum limit of the Insurer's liability for all such Loss in the aggregate shall be no greater than $15,000,000 (hereinafter called the "sub-limit of liability").  This sub-limit of liability shall be part of and not in addition to the aggregate Limit of Liability

Stated in the Item of the Declarations page entitled LIMIT OF LIABILITY and in no way shall serve to increase the Insurer's Limit of Liability as therein stated.

It is further understood and agreed that, solely in regard to the coverage provided by this endorsement, the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) for failure or omission of any Insurerd(s) to obtain, effect or maintain insurance or to comply with the terms of any insurance agreement.

The term "Foreign Subsidiary" means any Subsidiary that is formed or incorporated in a Foreign Jurisdiction.

The "Foreign Jurisdiction" means any jurisdiction, other than the United States, Canada or any territories, possessions or provinces thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                              *END 17*

**ENDORSEMENT# *18***

This endorsement, effective   *12:01 a.m.    October 31, 2015*        forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

### IPO/SECURITIES EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim or claims made against any duly elected or appointed directors and officers (including but not limited to claims brought by any governmental or regulatory entity or any security holder, whether directly, derivatively or by class action, or by any other claimant) whether under federal, state or foreign, statutory, regulatory or common law, if such claim alleges, arises out of, is based upon or is attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any security of the Company by on or on the behalf of the Company, in an initial public offering of securities (hereinafter an INITIAL PUBLIC OFFERING), including (but not limited to) any such claim which alleges, arises out of, is based upon or is attributable to any claim arising out of any alleged misrepresentations or non-disclosures in any written or oral statement, including but not limited to any Registration Statement, prospectus, offering circular, or other document or statement relating to the INITIAL PUBLIC OFFERING, as well as any failure to file any document required to be filed with the Securities and Exchange Commission.

DUTIES AND RESPONSIBILITIES OF THE PARTIES IN THE EVENT OF AN INITIAL PUBLIC OFFERING

It is further understood and agreed that in the event of an INITIAL PUBLIC OFFERING:

(1)    The Named Entity shall no later than thirty days prior to the effective date of the INITIAL PUBLIC OFFERING and continuing thereafter, give written notice thereof to the Insurer together with all particular and underwriting information relating thereto, thereupon as soon as practicable thereafter,

(2)    the Insurer shall propose such terms, conditions and additional premium as it may require to provide coverage for claims as described in the "General Exclusion" section of this endorsement, at which point,

(3)    in the event such terms, conditions and additional premium is accepted by the Named Entity, the exclusion described in the "General Exclusion" section of this endorsement shall no longer apply (said inapplicability to be executed and validated only by way of an endorsement to this policy), or

(4)    in the event such terms, conditions and additional premium is NOT accepted by the Named Entity OR in the event the Named Entity fails to give the written notice to the Insurer as described in paragraph (1) above, then

ENDORSEMENT# *18*  (Continued)

This endorsement, effective *12:01 a.m.   October 31, 2015*   forms a part of
policy number  *02-245-65-22*
issued to   *QXH II, INC.*

by    *Illinois National Insurance Company*

(5)     the exclusion as described in the  "General Exclusion" shall remain applicable to  the
        INITIAL PUBLIC OFFERING  AND further automatically  effective upon  the effective
        date of the INITIAL PUBLIC OFFERING (and without further action required by either
        party), a "Open Market  Securities  Claim  Exclusion"  (as described below) shall
        become effective as part of the terms, conditions and exclusions of this policy.

The term "Open Market Securities Claim Exclusion" shall mean:

The Insurer shall not be liable for Loss in connection with any claim or claims made against
an Insured brought by  a security holder  of the Company  whether directly, derivatively  on
the behalf of  the Company, or  by class action  EXCEPT: Any claim  brought by a  security
holder of the Company with regard to securities  purchased or held by such security holder
prior to the effective time of the INITIAL PUBLIC OFFERING, and otherwise covered by  the
terms and conditions of this policy.

Insurer hereby acknowledges that upon its receipt from the Company of the particulars and
underwriting information described in  (1) above Insurer  will be deemed to  be an "insider"
under the United States Securities law,  and Insurer is aware, and  will advise its directors,
officers, employees and agents who are informed as to any matters relating to any of such
particulars and underwriting information that the United States Securities laws prohibit any
person who has material, nonpublic information concerning matters relating to any possible
offering of securities  from purchasing  or selling  of a  company which  may be  a party  to
such transaction  or from  communicating such  information  to any  other person  under
circumstances in which it is  reasonably foreseeable that such  person is likely to purchase
or sell such securities.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

**ENDORSEMENT#** *19*

This endorsement, effective *12:01 a.m.   October 31, 2015*        forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by    *Illinois National Insurance Company*

### NOTICE OF CLAIM
### (REPORTING BY E-MAIL)

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

c-claim@AIG.com

Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

(a)    "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

(b)    "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

(c)    "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 019**

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 a.m.    October 31, 2015*        forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by    *Illinois National Insurance Company*

### OUTSIDE ENTITY COVERAGE AMENDATORY ENDORSEMENT
### (BLANKET NOT-FOR-PROFIT; NO WRITTEN REQUEST)

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 2. **DEFINITIONS**, paragraph (n), "Outside Entity," subparagraph (1) is deleted in its
entirety and replaced with the following:

> (1)    any not-for-profit organization; or

It is furthermore hereby understood and agreed that Clause 2. **DEFINITIONS** is amended
as follows:

1.    Subparagraph 2(i)(2) of the definition of "Individual Insured" is deleted in its entirety
and replaced with the following:

> (2)    any past, present or future duly elected or appointed directors, officers,
management committee members or members of the Board of Managers of
the Company serving in the capacity as director, officer, trustee or governor of
an Outside Entity, but only if such service is at the specific request or
direction of the Company;

2.    Subparagraph 2(t)(3) of the definition of "Wrongful Act" is deleted in its entirety and
replaced with the following:

> (3)    with respect to service on an Outside Entity, any matter claimed against
Individual Insured(s) as defined in (i)(2) arising out of such Insured serving as a
director, officer, trustee or governor of an Outside Entity in such capacity, but
only if such service is at the specific request or direction of the Company.

3.    With respect to the coverage afforded under this endorsement it is understood and
agreed that in the event of a disagreement between the Company and an Insured as
to whether such Individual Insured was acting "at the specific request or direction
of the Company," it is hereby understood and agreed that this policy shall abide by
the determination of the Company on this issue and such determination shall be
made by written notice to the Insurer within ninety (90) days after the Claim against
such Individual Insured is made. In the event no determination is made within such
period, this policy shall apply as if the Company determined that such Individual
Insured was not acting at the Company's specific request or direction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 020**

ENDORSEMENT# *21*

This endorsement, effective *12:01 a.m.   October 31, 2015*        forms a part of
policy number *02-245-65-22*
issued to     *QXH II, INC.*

by      *Illinois National Insurance Company*

### PENDING AND PRIOR LITIGATION EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
EXCLUSIONS is hereby  amended by  deleting exclusion (e)  in its  entirety and replacing  it
with the following:

> (e)     alleging, arising out of, based upon or attributable to, as of
> October 31,  1975, any  pending or  prior: (1)  litigation; or  (2)
> administrative or  regulatory proceeding  or investigation  of which  an
> Insured had notice, or alleging any Wrongful Act which is the same or
> Related Wrongful Act to that alleged in such pending or prior litigation
> or administrative or regulatory proceeding or investigation;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                              *END 21*

**ENDORSEMENT#** *22*

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of policy number *02-245-65-22* issued to *QXH II, INC.*

by    *Illinois National Insurance Company*

### PRIVATEEDGE PLUS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.    Clause 2. **DEFINITIONS** is amended as follows:

(a)    Paragraph (b). "Claim," is deleted in its entirety and replaced with the following:

(b)    "Claim" means:

(1)    a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

(2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(i)    service of a complaint or similar pleading;

(ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or

(iii)    receipt or filing of a notice of charges;

(3)    a civil, criminal, administrative or regulatory investigation of an Individual Insured:

(i)    once such Individual Insured is identified in writing by such investigating authority as a person against whom a proceeding described in subparagraph 2(b)(2) of this definition, may be commenced; or

(ii)    in the case of an investigation by the Securities and Exchange commission ("SEC") or a similar state or foreign government authority, after:

(a)    the service of a subpoena upon such Individual Insured; or

(b)    the Individual Insured is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such Individual Insured; or

(4)    an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement;

The term "Claim" shall include an Employment Practices Claim and a

© All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

Securities Claim.

(b) Paragraph (c), "Company," is deleted in its entirety and replaced with the following:

(c) "Company" means (i) the Named Entity; (ii) any Subsidiary thereof; and (iii) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor- in- possession (or equivalent status outside the United States of America), if any.

(c) Paragraph (f), "Employee," is deleted in its entirety and replaced with the following:

(f) "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co- worker or subordinate position or otherwise, including any part- time, volunteer, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, pursuant to a written contract.

(d) Paragraph (h) "Employment Practices Violation(s)," is amended as follows:

(i) items (11) and (12) are deleted in their entirety and replaced with the following:

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

(ii) the last paragraph thereof is deleted in its entirety and replaced with the following:

With respect to any individual other than an Employee of the Company or an applicant for employment with the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, harassment or violation of an individual's civil rights relating to such discrimination or harassment, whether direct, indirect, intentional or unintentional.

(e) Paragraph (m), "No Liability," is deleted in its entirety.

(f) In paragraph (n), "Outside Entity," subparagraph (n)(1) is deleted in its entirety and replaced with the following:

(1) any not- for- profit organization; or

(g) Paragraph (s), "Subsidiary," is deleted in its entirety and replaced with the following:

(s) "Subsidiary" means:

(1) any for- profit entity, whose securities are not publicly traded, of which the Named Entity has or had Management Control

◊ All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

("Controlled Entity") on or before the inception date of the Policy Period, either directly or indirectly through one or more other Controlled Entities;

(2)    any for- profit entity, whose securities are not publicly traded, of which the Named Entity acquires Management Control during the Policy Period, either directly or indirectly through one or more other Controlled Entities; and

(3)    any not- for- profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a Company.

Notwithstanding the foregoing, coverage as is afforded under this policy with respect to a Claim made against any Subsidiary or any Individual Insureds thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that the Named Entity obtained Management Control of such Subsidiary and prior to the time that such Named Entity ceased to have Management Control of such Subsidiary.

(h)    In paragraph (t), "Wrongful Act," subparagraph (3) is deleted in its entirety and replaced with the following:

(3)    with respect to service on an Outside Entity, any matter claimed against Individual Insured(s) as defined in (i)(2) arising out of such Insured serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific direction and/or request of the Company. Provided, however, in the event of a disagreement between the Company and an Insured as to whether such Individual Insured was acting "at the specific direction and/or request of the Company," it is hereby understood and agreed that this policy shall abide by the determination of the Company on this issue and such determination shall be made by written notice to the Insurer within ninety (90) days after the Claim against such Individual Insured is made. In the event no determination is made within such period, this policy shall apply as if the Company determined that such Individual Insured was not acting at the Company's specific request or direction.

(i)    Clause 2. **DEFINITIONS** is further amended to include the following definitions at the end of that Clause:

(aa)    "Cleanup Costs" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of Pollutants.

(bb)    "Domestic Partner" means any individual person qualifying as a domestic partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the Named Entity or any Subsidiary.

(cc)    "Financial Insolvency" means the: (i) appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent Company; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii), as to both (i) or (ii), any equivalent events outside the United States of America.

© All rights reserved.

*END 022*

**ENDORSEMENT#** *22*    (continued)

(dd)   "Foreign Jurisdiction" means any jurisdiction, other than the United States or any of its territories or possessions.

(ee)   "Indemnifiable Loss" means Loss for which a Company has indemnified or is permitted or required to indemnify an Individual Insured pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a Company.

(ff)   "Management Control" means: (1) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an organization, to elect, appoint or designate a majority of: the Board of Directors of a corporation, the management committee of a joint venture or partnership or the management board of a limited liability company.

(gg)   "Non-Indemnifiable Loss" means Loss for which a Company has neither indemnified nor is permitted or required to indemnify an Individual Insured pursuant to law or contract or the charter, bylaws, operating agreement or similar document of a Company.

(hh)   "Pollutants" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

2.   Clause 3. **EXTENSIONS** is deleted in its entirety and replaced with the following:

**3.   EXTENSIONS**

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or Domestic Partner of an Individual Insured for all Claims arising solely out of his or her status as the spouse or Domestic Partner of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse or Domestic Partner, or property transferred from the Individual Insured to the spouse or Domestic Partner; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse or Domestic Partner, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

It is further understood and agreed that in the event that the Insurer shall announce either: (1) a new Directors and Officers insurance policy form; or (2)

✆ All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

an enhancement of coverage endorsement to this policy form, which is to be made available to all Insureds and for which no additional premium is required, then the Named Entity shall have the right to such new policy or such new coverage enhancement endorsement subject to all underwriting information or particulars as the Insurer may require for such new policy or enhanced coverage.

3.   In Clause 4. **EXCLUSIONS**, paragraphs (a), (b), (c), (g), (h), (i), (l) and (n) are deleted in their entirety and replaced with the following:

(a)   arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the Insured was not legally entitled; provided, however, this exclusion shall not apply to Employment Practices Claim(s);

(b)   arising out of, based upon or attributable to: (1) the purchase or sale by an Insured of securities of the Company within the meaning of Section16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication establishes that such 16(b) violation occurred; or (2) the payment to any Insured(s) of any remuneration without the previous approval of the stockholders of the Company, if any final adjudication establishes such payment was illegal;

(c)   arising out of, based upon or attributable to the committing of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such criminal, fraudulent, dishonest act or willful violation of any statute, rule or law occurred;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

(g)   for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or any director, officer, trustee or governor thereof; or which is brought by any security holder of the Outside Entity, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the Outside Entity, the Company, or any director, officer, trustee or governor of the Outside Entity or the Company; provided, however, this exclusion shall not apply to:

(1)   any Claim brought by a director, officer, trustee or governor of an Outside Entity in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim that is covered by this Policy;

(2)   in any bankruptcy proceeding by or against an Outside Entity, any Claim brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such Outside Entity;

(3)   any Claim brought by any past director, officer, trustee or governor of an Outside Entity who has not served as a duly elected or appointed director, officer, trustee, governor, General Counsel or Risk Manager (or equivalent position) of or consultant for an Outside Entity for at least four (4) years prior to such Claim being first made against any person;

(4)   any Claim brought by a director, officer, trustee or governor of an

© All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

Outside Entity formed and operating in a Foreign Jurisdiction against any Outside Entity Executive of such Outside Entity, provided that such Claim is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

    (5)    any Employment Practices Claim(s);

(h)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured under any express contract or agreement; provided, however, this exclusion shall not apply to:

    (i)    liability which would have attached in the absence of such express contract or agreement;

    (ii)    Loss constituting Defense Costs; or

    (iii)    any Claim other than Employment Practices Claim(s) (see Exclusion (q)(3) for contract exclusion applicable to Claims other than Employment Practices Claim(s));

(i)    which is brought by or on behalf of the Company or any Individual Insured, other than an Employee of the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

    (1)    any Claim brought by an Individual Insured where such Claim is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is covered by this policy;

    (2)    in any bankruptcy proceeding by or against a Company, any Claim brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such Company;

    (3)    any Claim brought by any past director, officer, management committee member or member of the Board of Managers of a Company, who has not served as a duly elected or appointed director, officer, management committee member or member of the Board of Managers (or equivalent position) of or consultant to a Company for at least four (4) years prior to such Claim being first made against any person;

    (4)    any Claim brought by a director, officer, management committee member or member of the Board of Managers of a Company formed and operating in a Foreign Jurisdiction against such Company or a director, officer, management committee member or member of the Board of Managers thereof, provided that such Claim is brought and maintained outside the United States of America, Canada or any other common law country (including any territories thereof); or

    (5)    any Employment Practices Claim(s);

(l)    for bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to Securities Claims;

(n)    for: (i) any actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants; provided, however, this exclusion shall not apply to:

© All rights reserved.

**END 022**

**ENDORSEMENT#** *22*   (continued)

(1) Non-Indemnifiable Loss, other than Non-Indemnifiable Loss constituting Cleanup Costs; or

(2) Loss in connection with a Securities Claim, other than Loss constituting Clean-up Costs;

4. In Clause 4. **EXCLUSIONS** paragraph (j) is amended by adding the following to the end thereof:

Furthermore, this exclusion will not apply to:

(3) any Claim for Loss alleging a Wrongful Act(s) which occurred during the Insured's preparations to commence an initial public offering ("IPO") and which occurred at any time prior to 12:01 a.m. on the date the IPO commences ("IPO Effective Time"), including any Claim(s) for Loss alleging a Wrongful Act(s) which occurred during the road show; provided, however, that the coverage otherwise afforded under this subsection (3) shall be deemed to be void ab initio effective the IPO Effective Time; provided further, however, that the foregoing void ab initio shall not apply with respect to a Claim which is first made and reported pursuant to Clause 7(a) of the policy prior to the IPO Effective Time and prior to the inception of a public company D&O policy which is valid and collectible with respect to such Claim.

5. In Clause 4. **EXCLUSIONS**, subparagraph (3) of paragraph (q) is deleted in its entirety and replaced with the following:

(3) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement; provided, however, this exclusion does not apply to Employment Practices Claims(s) (see Exclusion (h), above, for contract exclusion applicable to Employment Practices Claim(s));

6. The last paragraph of Clause 6. **RETENTION CLAUSE** is deleted in its entirety and replaced with the following:

It is further understood and agreed that in the event the Company is unable to pay an applicable Retention amount due to Financial Insolvency, then the Insurer shall commence advancing Loss within the Retention; provided, however, that the Insurer shall be entitled to recover the amount of Loss advanced within the Retention from the Company pursuant to Clause 13. SUBROGATION of this policy.

7. In Clause 7. **NOTICE/REPORTING PROVISIONS**, paragraph (a) is deleted in its entirety and replaced with the following:

(a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable after (i) the Company's Risk Manager or General Counsel (or equivalent position) first become aware of the Claim, but in all events no later than:

(1) anytime during the Policy Period or during the Discovery Period (if applicable); or

(2) within ninety (90) days after the end of the Policy Period or the Discovery Period (if applicable).

8. The last paragraph of Clause 8. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS** is deleted in its entirety and

⊕ All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

replaced with the following:

Furthermore, solely with respect to Employment Practices Claims, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Employment Practices Claim shall not exceed: (1) the amount for which the Insurer could have settled such Employment Practices Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 80% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 20% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

9.   The last paragraph of Clause 19. **REPRESENTATIONS AND SEVERABILITY** is deleted in its entirety and replaced with the following:

The Insureds agree that in the event that the particulars and statements contained in the application are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the Insurer under the policy, then this policy shall be void *ab initio* as to any Insured who knew as of the inception date of the Policy Period of the facts that were not accurately and completely disclosed in the application (whether or not such Insured knew that such facts were not accurately and completely disclosed in the application). Solely for purposes of determining whether this policy shall be void *ab initio* as to an Insured, such aforesaid knowledge possessed by any Insured shall not be imputed to any other Insured.

10.   Clause 13. **SUBROGATION** is deleted in its entirety and replaced with the following:

**13.   SUBROGATION**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to each Insured's rights of recovery thereof, and each Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the Insured. In no event, however, shall subrogation be had against any Individual Insured under this policy, unless such Individual Insured has been convicted of a criminal act, or been determined by a final adjudication to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or determined by a final adjudication to have obtained any profit or advantage to which such Individual Insured was not legally entitled.

In the event that the Insurer shall for any reason pay Indemnifiable Loss on behalf of an Individual Insured, the Insurer's subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the Insurer making any payment of Loss within the Retention, the Insurer shall have a direct contractual right under this policy to recover from the Company, or in the event of the bankruptcy of the Company, from the debtor-in-possession (or equivalent status outside the United States) such Loss which was paid within the Retention. Such direct contractual right of recovery against the Company shall be in addition to and independent of the Insurer's subrogation right pursuant to this Clause 10 and any other rights the Insurer may have under applicable law.

◈ All rights reserved.

*END 022*

**ENDORSEMENT#** *22*   (continued)

11.   The policy is amended to include the following Clause at the end of the policy:

**CA- 1.  ORDER OF PAYMENTS**

In the event of Loss arising from any Claim(s) for which payment is due under the provisions of this policy but which Loss, in the aggregate, exceeds the remaining available Limit of Liability of this policy, then this policy shall:

(a)   first pay such Loss for which coverage is provided under Coverage A of the policy, then with respect to whatever remaining amount of the Limit of Liability is available after payment of such Loss,

(b)   then pay such Loss for which coverage is provided by Coverage B of the policy.

In the event of Loss arising from a Claim(s) for which payment is due under the provisions of this policy (including those circumstances described above in this Clause), the Insurer shall at the written request of the Named Entity:

(a)   first pay such Loss for which coverage is provided under Coverage A of the policy, then

(b)   either pay or hold payment for such Loss for which coverage is provided by Coverage B of the policy.

In the event that the Insurer withholds payment under Coverage B of the policy pursuant to the above request, then the Insurer shall at any time in the future, at the request of the Company, release such Loss payment to the Company, or make such Loss payment directly to an individual director or officer in the event of covered Loss under any Claim(s) covered under this policy pursuant to Coverage A of the policy.

Nothing in this Clause shall be construed to increase the Limit of Liability of the Insurer under this policy which such Limit of Liability shall remain the maximum liability of the Insurer under all Claims under all Coverage under this policy combined.

12.   In the event that there is an inconsistency between any term or condition of this endorsement and any term or condition of any other endorsement to this policy, whether such endorsement precedes or follows this endorsement in time or sequence ("Other AIG Amendatory Endorsement"), then it is understood and agreed that the Insurer shall apply those terms and conditions of either this endorsement or the Other AIG Amendatory Endorsement which are more favorable to the Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 022*

ENDORSEMENT# 23

This endorsement, effective   12:01 a.m.   October 31, 2015       forms a part of
policy number   02-245-65-22
issued to   QXH II, INC.

by      *Illinois National Insurance Company*

### SEVERABILITY OF THE APPLICATION ENDORSEMENT
### (FULL INDIVIDUAL SEVERABILITY; TOP 3 COMPANY POSITIONS IMPUTED TO
### COMPANY; NON-RESCINDABLE)

In consideration of the premium charged, it is hereby understood and agreed that Clause
19. **REPRESENTATIONS AND SEVERABILITY** is hereby deleted in its entirety and replaced
with the following:

**19.   SEVERABILITY**

In granting coverage under this Policy, it is agreed that the Insurer has relied upon
the statements and representations contained in the application for this policy
(including materials submitted thereto and, if this is a renewal application, all such
previous policy applications for which this policy is a renewal) as being accurate
and complete. All such statements and representations are the basis of this policy
and are to be considered as incorporated into this policy.

With respect to any statements, warranties and representations contained in the
application, and solely with respect to the issue of whether coverage shall be
afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below,
no knowledge possessed by an Individual Insured shall be imputed to any other
Individual Insured. However, in the event that any of the statements, warranties or
representations is not accurately and completely disclosed in the application, no
coverage shall be afforded for any Claim alleging, arising out of, based upon,
attributable to or in consequence of the subject matter of any incomplete or
inaccurate statements, warranties or representations under:

(1) Clause 1. Insuring Agreements, COVERAGE A, with respect to any Individual
Insured who knew of such inaccurate or incomplete statements, warranties or
representations;

(2) Clause 1, Insuring Agreements, Coverage B(ii), with respect to any Company
to the extent it indemnifies any Individual Insured referenced in (i), above; and

(3) Clause 1, Insuring Agreements, Coverage B(i), with respect to any Company if
any past or present chief executive officer, chief operating officer or chief
financial officer of the Company knew of such inaccurate or incomplete
statements, warranties or representation,

whether or not such Individual Insured knew that such facts were not accurately
and completely disclosed in the application.

95877 (09/07)                              *END 23*

ENDORSEMENT# *23*   (Continued)

This endorsement, effective   *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

The Insurer  shall  not be  entitled  under any  circumstances  to rescind  coverage
under the Policy with respect to any Insured, but such coverage  will be subject to
all other terms, conditions and exclusions of the policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

95877 (09/07)          *END 23*

ENDORSEMENT# *24*

This endorsement, effective *12:01 a.m.   October 31, 2015*      forms a part of
policy number *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

**SPECIFIC ENTITY EXCLUSION
(CLAIMS BROUGHT BY OR AGAINST)**

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for any Loss in connection with any
Claim(s) brought by or on behalf of or against (i) the entity(ies) listed below; or (ii) any
director, officer, partner, management committee member, member of the Board of
Managers or security holder of an entity listed below:

     1.    Eco Bat Technologies Ltd

Provided, however, this exclusion shall not apply to any other majority owned Subsidiaries
of QXH II, Inc or EB Holdings II, Inc.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT            *END 24*

ENDORSEMENT# 25

This endorsement, effective 12:01 a.m.   October 31, 2015      forms a part of
policy number 02-245-65-22
issued to   QXH II, INC.

by    Illinois National Insurance Company

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.  This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.  "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

94039 (05/07)                    *END 25*

ENDORSEMENT# *26*

This endorsement, effective   *12:01 a.m.   October 31, 2015*            forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by      *Illinois National Insurance Company*

## CONDUCT EXCLUSION AMENDED
## (FINAL NON-APPEALABLE ADJUDICATION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
**EXCLUSIONS**, paragraphs (a), (b) and (c) are deleted in their entirety and replaced with the
following:

(a)    arising out of, based upon or attributable to the gaining of any profit or
advantage to which any final non-appealable adjudication establishes the
Insured was not legally entitled;

(b)    arising out of, based upon or attributable to: (1) profits made from the
purchase or sale by an Insured of securities of the Company within the
meaning of Section16(b) of the Securities Exchange Act of 1934 and
amendments thereto or similar provisions of any state statutory law if any
final non-appealable adjudication establishes that such 16(b) violation
occurred; or (2) payments to any Insured of any remuneration without the
previous approval of the stockholders of the Company, if any final
non-appealable adjudication establishes such payment to be illegal;

(c)    arising out of, based upon or attributable to the committing of any deliberate
criminal or deliberate fraudulent act, or dishonest act or any willful violation
of any statute, rule or law, if any final non-appealable adjudication
establishes that such deliberate criminal or deliberate fraudulent act, or
dishonest act or willful violation of any statute, rule or law occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                                    *END 26*

ENDORSEMENT# *27*

This endorsement, effective *12:01 a.m.   October 31, 2015*   forms a part of
policy number   *02-245-65-22*
issued to   *QXH II, INC.*

by   *Illinois National Insurance Company*

**RECOGNITION OF EROSION OF RETENTION BY
PAYMENTS UNDER SIDE A FILL-IN ENDORSEMENT
(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. The following paragraph is  added to the end  of Clause 6.  RETENTION of the **D&O
   Coverage Section**:

   If a **Company** fails  or refuses  to pay  covered **Indemnifiable  Loss** of an **Individual
   Insured** within an applicable Retention, then solely to the extent an insurer agrees to
   pay or pays such **Loss** pursuant to the terms and conditions of a **Side A-Excess  DIC
   Insurance Policy**, the  **Insurer** shall recognize  that the **Side  A-Excess DIC Insurance
   Policy** payments erode (contribute to and reduce) the applicable Retention amount.

2. As a precondition  to such  recognition of the  erosion of  the Retention amount,  an
   **Insured** shall provide the **Insurer** with  written proof, to the **Insurer**'s satisfaction,  of
   the payment of such **Loss** under the **Side A-Excess DIC Insurance Policy**.

3. Indemnification is deemed  "refused" if the  **Company** gives a  written notice  of the
   refusal to the  **Individual Insured**.  Indemnification is deemed  "failed" if  it has  been
   requested by any **Individual Insured** in writing and has not been  provided by, agreed
   to be  provided  by or  acknowledged  as  an obligation  of such **Company** to  such
   **Individual Insured** within  60 days  of his  or her  request.  In either  case, such
   indemnification shall  only  be deemed  "failed" or  "refused" to  the  extent such
   indemnification is not  provided, or agreed  to be provided  or acknowledged by  and
   collectible from a **Company** or other source.

4. "**Side A-Excess  DIC Insurance Policy**" means  any insurance  policy  written
   specifically as excess over  this policy that provides  "Side A" (non-indemnifiable  or
   non-indemnified loss) coverage with difference-in-conditions features.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                                    *END 27*

**ENDORSEMENT#** *28*

This endorsement, effective at *12:01 a.m. October 31, 2015*      forms a part of
Policy No. *02-245-65-22*
Issued to: *QXH II, INC.*

By: *Illinois National Insurance Company*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 028*

89644 (6/13)                                    Page 1 of 1

**ENDORSEMENT#** *29*

This endorsement, effective *12:01 a.m.   October 31, 2015*            forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by   *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 68461 | 08/97 | PRIVATE EDGE ADMITTED DEC |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 68462 | 08/97 | PRIVATE EDGE ADMITTED POLICY PAGES |
|  | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
|  | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 108256 | 02/11 | TEXAS AMENDATORY ENDORSEMENT |
| 74802 | 07/11 | TEXAS AMENDATORY ENDORSEMENT - CANCELLATION/NONRENEWAL |
| 82545 | 06/03 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| MNSCPT |  | ADDITIONAL ENTITY(IES) INCLUDED IN DEFINITION OF COMPANY |
| 99486 | 06/08 | ANTITRUST COVERAGE ENDORSEMENT |
| 82463 | 06/03 | CAPTIVE INSURANCE COMPANY (WITH SPECIFIC CAPTIVE CARVE OUT) |
| MNSCPT |  | CLAIM DEFINITION AMENDED |
| 86862 | 11/04 | DISCOVERY AMENDED BILATERAL - PREMIUM PRESET |
| MNSCPT |  | E-DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT |
| 82475 | 06/03 | EMPLOYMENT PRACTICES COVERAGE DELETED |
| 97368 | 02/08 | EXTRADITION COVERAGE |
| MNSCPT |  | FINAL ADJUDICATION ENDORSEMENT |
| M120388 | 09/15 | INDIVIDUAL INSURED(S) DEFINITION AMENDED |
| MNSCPT |  | INDIVIDUAL INSURED(S) DEFINITION AMENDED |
| 86903 | 11/04 | INSURANCE COMPANY ERRORS & OMISSIONS EXCLUSION |
| MNSCPT |  | INSURED V. INSURED EXCLUSION AMENDATORY ENDORSEMENT |
| MNSCPT |  | INSURED VS  INSURED EXCLUSION  AMENDED |
| MNSCPT |  | IPO/SECURITIES EXCLUSION |

© All rights reserved.

*END 029*

**ENDORSEMENT#** *29*

This endorsement, effective *12:01 a.m.   October 31, 2015*                 forms a part of
policy number   *02-245-65-22*
issued to *QXH II, INC.*

by      *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 97363 | 02/08 | OUTSIDE ENTITY COVERAGE AMENDATORY ENDORSEMENT (BLANKET NOT-FOR-PROFIT; NO WRITTEN REQUEST) |
| MNSCPT | | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED |
| 97737 | 03/08 | PRIVATEEDGE PLUS AMENDATORY ENDORSEMENT |
| 95877 | 09/07 | SEVERABILITY OF THE APPLICATION ENDORSEMENT |
| MNSCPT | | SPECIFIC ENTITY EXCLUSION |
| 94039 | 05/07 | STATE AMENDATORY INCONSISTENT |
| MNSCPT | | CONDUCT EXCLUSION AMENDED |
| MNSCPT | | RECOGNITION OF EROSION OF RETENTION BY |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 53365 | 07/96 | TEXAS NOTICE - LOSS CONTROL |
| 94396 | 05/15 | TEXAS COMPLAINT NOTICE FOR ADMITTED PAPER CO. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 029*

**NOTICE TO POLICYHOLDER OF**

*Illinois National Insurance Company*

This notice is to inform you of our loss control programs available in the State of Texas.

We have Field Safety Representatives with the experience and expertise to provide accident/loss prevention services reasonably commensurate with the hazard, loss experience, size and nature of your business operation.

Our services may include loss prevention surveys, risk exposure analysis, staff training, counseling, accident and loss analysis, worker health and safety evaluations, risk improvement recommendations, educational material and literature related to your specific profession or industry.

In the event you decide not to utilize our loss control services and opt to use your own safety department or hire an outside contractor, the service must be provided by qualified loss prevention representatives who are recognized by the State of Texas.

If you elect not to utilize our loss control services we require you to provide us with the following information (on your company letterhead stationery, signed by an officer of your firm):

- Acknowledgement of our offer of loss control services and your written rejection.

- Your reasons for selection of an alternative.

- Your alternative loss control program, which must be reasonably commensurate with the risk.

- Verification of the qualification of those who will be performing your loss control services.

- Acknowledgement that quarterly summaries of activities outlined in your loss control program will be submitted to us for review.

If you have any questions or wish to discuss this matter, contact our Texas Loss Control Service Coordinating Unit, at 1-800-221-0651.

**TEXAS NOTICE**

| | |
|---|---|
| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |

To obtain information or make a complaint:

Para obtener información o para presentar una queja:

You may call the Company's toll-free telephone number for information or to make a complaint at:

Usted puede llamar al número de teléfono gratuito de la compania para obtener información o para presentar una queja al:

1-877-541-9748

1-877-541-9748

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights, or complaints at:

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre companias, coberturas, derechos, o quejas al:

1-800-252-3439

1-800-252-3439

You may write the Texas Department of Insurance:

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX  78714-9104
Fax:    (512) 490-1007

P.O. Box 149104
Austin, TX  78714-9104
Fax:    (512) 490-1007

Web:   http://www.tdi.texas.gov

Sitio web:  http://www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero.  Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part of the attached document.

**ADJUNTE ESTE AVISO A SU PÓLIZA:**
Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.



# CLAIM REPORTING FORM

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number: _02-245-65-22_      Date: _____

Type of Coverage: D&O _____  E&O _____  Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

_QXH II, INC._ _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: _MARSH USA INC._ _____

Address: _540 WEST MADISON STREET, CHICAGO, IL 60661_ _____

Address:_____

Contact: _Greg Chambers_ _____      Phone:_____

eMail: _Gregory.Chambers@marsh.com_ _____

Send Notice of Claims to:     AIG                        Phone: (888) 602-5246
                              Financial Lines Claims     Fax:   (866) 227-1750
                              P.O. Box 25947             Email: c-Claim@AIG.com
                              Shawnee Mission, KS 66225



# CLAIM REPORTING FORM
# FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  *02-245-65-22*

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:   Employee Dishonesty   _____      Computer Fraud   _____

Funds Transfer   _____      Robbery/Burglary   _____

ID Theft   _____      Forgery   _____

Client Property   _____      In Transit   _____

ERISA   _____      Credit Card Forgery   _____

Other   _____      if Other, describe: _____

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone:  (888) 602- 5246
Fax:      (866) 227- 1750
Email:   c- Claim@AIG.com

*centralized Customer Link and Information Management*