SUSMAN GODFREY LLP
ALEXANDRA WHITE, ESQ.
(admitted *pro hac vice*)
Email: lwhite@susmangodfrey.com
STEVEN M. SHEPARD, ESQ.
(admitted *pro hac vice*)
Email: sshepard@susmangodfrey.com
FLOYD SHORT, ESQ.
(admitted *pro hac vice*)
Email: fshort@susmangodfrey.com
RAVI BHALLA, ESQ.
(admitted *pro hac vice*)
Email: rbhalla@susmangodfrey.com
TYLER FINN, ESQ.
(admitted *pro hac vice*)
Email: tfinn@susmangodfrey.com
1000 Louisiana Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
DYLAN CICILIANO, ESQ.
Nevada Bar No. 12348
Email: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Attorneys for EB Holdings II, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EB HOLDINGS II, INC. and QXH II, INC., <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS NATIONAL INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, and FEDERAL INSURANCE COMPANY, <br><br> Defendants. | Case No.: 2:20-cv-02248-JCM-NJK <br><br><br> **PLAINTIFF EB HOLDINGS II, INC.'S MOTION FOR LEAVE TO SEEK DISCOVERY FROM DEFENSE EXPERTS AFTER MAY 6, 2022** |

Pursuant to Federal Rules of Civil Procedure 26 and Local Rule IA 6-1, Plaintiff EB Holdings II, Inc. ("Plaintiff") moves the Court for leave to continue seeking discovery from Defendants' experts after the deadline of May 6, 2022. This motion is supported by the Declaration of Steven Shepard, Esq., attached hereto as Exhibit 1, and the exhibits thereto, as well as the other papers filed in this matter.

/ / /

/ / /

/ / /

## I.    BACKGROUND ON THIS ACTION

This is an insurance coverage dispute. Defendant Illinois National issued a primary policy, which provides directors and officers and liability coverage to Plaintiff EBH and QXH. Illinois National also issued an excess liability policy, as did Defendants Continental Casualty Company and Federal Insurance Company. The policy period for these policies ran from October 1, 2015 to November 1, 2016. *See* Dkt. 87-1 at 3; Dkt. 87-2 at 3; Dkt. 87-3 at 3; Dkt. 87-4 at 3.

In September 2016, EBH and QXH were sued by a group of Plaintiff, referred to as the "GoldenTree Group," in Nevada state court. *See* Dkt. 87 at ¶ 22. The claims in that litigation pertained to a €600M payment-in-kind loan that EBH took out in 2007 (the "PIK loan").

EBH gave timely notice to defendants of the action brought by the GoldenTree Group, and sought coverage from Defendants, under all four policies, for EBH's losses. See *id.* at ¶ 55. Defendants ultimately denied coverage in late 2017. *See id.* at ¶¶ 59, 60. On December 11, 2020, EBH and QXH filed this action. *See* Dkt. 1.

Plaintiffs incurred more than $40 million in defense costs in defending against the GoldenTree action. In this action, Plaintiffs seek to recover those costs in damages from Defendants for Defendants' breach of the insurance policies.

## II.    SUMMARY OF COMPLETED EXPERT DISCOVERY

Fact discovery closed on March 25. Dkt. 107, at 3. Expert discovery began on April 8, 2022, with the service of initial expert reports. *Id.* The deadline for completing expert discovery is today: Friday, May 6. *Id.* The next deadline, for dispositive motions, is June 3, 2022. *Id.* The relief requested in this motion <u>will not</u> necessitate any change to the June 3 deadline.

Plaintiffs have disclosed opinions from four expert witnesses in total.  Defendants have disclosed opinions from five expert witnesses.  Shepard Decl. ¶ 2.

The parties have completed nearly all of the expert discovery that was originally contemplated, namely, the exchange of initial and rebuttal expert reports and the depositions of the parties' experts. *Id.* ¶ 3.

Specifically, the following expert discovery has been completed, or will be completed by the May 6 discovery deadline:

a.  Plaintiff served initial expert reports for four testifying experts.

b.  Defendants served initial expert reports for two testifying experts.

c.  Plaintiff served rebuttal expert reports from two of their previously designated testifying experts.

d.  Defendants served rebuttal expert reports from two of their previously designated experts, as well as rebuttal reports from three newly designated experts.

e.  Deposition of Plaintiffs' Expert A. William Maupin

f.  Deposition of Plaintiffs' Expert John Young

g.  Deposition of Defendants' Expert John S. Pierce

h.  Deposition of Plaintiffs' Expert James Schratz

i.  Deposition of Defendants' Expert John Dore

j.  Deposition of Plaintiffs' Expert David B. Miller

k.  Deposition of Defendants' Expert Joseph Monteleone

l.  Deposition of Defendants' Expert Erik Volk

m.  Deposition of Defendants' Expert Richard Donohoe

*Id.*

## III.   PLAINTIFFS REQUEST A MODEST EXTENSION TO CONTINUE SEEKING ADDITIONAL DISCOVERY FROM TWO DEFENSE EXPERTS

Plaintiffs request a modest extension of the May 6 deadline for the limited purpose of seeking additional documents and information relating to the opinions of two defense experts: John Pierce, Esq., and Eric Volk.  Plaintiffs already made these requests to Defendants, during the expert discovery period.  Defendants have objected to these requests, but the parties have not exhausted the meet-and-confer process.  *See* Shepard Decl. ¶ 11, Ex. 4. The instant motion merely seeks leave to continue that process after May 6.

The instant motion is being made so that, if the meet-and-confer process on these requests is unsuccessful, any motion to compel filed by Plaintiff will not be denied as untimely. *See Garcia v. Serv. Employees Int'l Union*, 332 F.R.D. 351, 354 (D. Nev. 2019) ("[A]bsent unusual circumstances, the outer limit for filing a motion to compel is the deadline for filing dispositive motions.").

/ / /

/ / /

### A.    John Pierce

Mr. Pierce is Defendants' expert regarding the reasonableness and necessity of the defense costs (e.g., legal fees) that Plaintiffs incurred in the *GoldenTree* action and for which Plaintiffs are seeking reimbursement from the defendant insurance carriers.  Essentially, Mr. Pierce conducted an "audit" of the tens of thousands of time entries, contained on the many legal invoices submitted by Plaintiffs' defense lawyers.  Mr. Pierce applied numerous "deductions" to these entries based on what he identified as improper "billing practices."  His most recent report "questions"—i.e., deems improper, for one reason or another—$22,218,518 of defense costs, that is, *62% of the total billings that he reviewed.*

On April 21, 2022, Plaintiff served on Defendants their subpoena to Pierce. Shepard Decl. ¶ 4. That subpoena requested the following documents:

#### DOCUMENTS TO BE PRODUCED

1.    Any and all Documents, notes, memoranda, reports, records, correspondence, and other written material produced by deponent, provided to the deponent, or considered by the deponent in the formation of any opinion relating to this Action;

2.    Any and all slides, charts, drawings, models, exhibits or other demonstrative materials prepared by the deponent or at the deponent's direction that will be used by the deponent to summarize or support any opinion relating to this Action;

3.    All Documents and communications regarding the deponent's compensation for any study, reports, opinions, or testimony relating to this Action.

*See* Ex. 2 (Objections to Subpoena to John S. Pierce).

Illinois National responded to each and every one of these requests with the same boilerplate objection:

Illinois National objects to this request as seeking materials that are protected from disclosure by Fed. R. Civ. P. 26(b)(4); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2017 WL 2991347, at *10 (D. Nev. July 12, 2017).  Mr. Pierce's report and rebuttal report complied with his disclosure obligations under Fed. R. Civ. P. 26(b)(4).

*See id.*

On May 3, 2022, Plaintiff's counsel deposed Pierce. Shepard Decl. ¶ 5.  His testimony revealed numerous instances in which Defendants had withheld relevant discoverable information.

<u>First</u>, Mr. Pierce testified that he relied on an outside auditing firm, led by an individual named Michael Bychel, to create the "fee database" that forms the bases for many of his opinions about supposedly improper billing practices. Mr. Pierce testified that Mr. Bychel worked at his direction to 1) input the invoice information into a computer program and 2) code each time entry according to the various supposed improper billing practices. Those codes were then entered into the computer program. *Id.* Mr. Pierce testified that he "could ask for all the data on an Excel spreadsheet." Such a spreadsheet is necessary in order for Plaintiff to have a reasonable opportunity to evaluate and check the "net" calculations reported and relied upon by Mr. Pierce in his summary charts at the end of his reports. The only alternative way to do this, Mr. Pierce testified, is for Plaintiff to search for each of the tens of thousands of billing entries, in each of the nearly 200 Adobe PDF exhibits, to determine whether each billing entry was (or was not) flagged in each exhibit as evincing an improper practice.[1]  That alternative would require Plaintiff to expend tens if not hundreds of man-hours. By contrast, Mr. Bychel's computer system can produce it, in usable Excel format, in minutes.

Mr. Bychel also determined which deductions to count for purposes of calculating the "net" deductions reported by Pierce in his final summary charts at the ends of his reports. Pierce clearly testified that Mr. Bychel, not him, did this work.

The above-cited testimony demonstrates Mr. Pierce's reliance on Mr. Bychel and his firm to produce the documents on which Mr. Pierce admittedly relied to form his opinions.

<u>Second</u>, Mr. Pierce claimed during his deposition to remember nothing about how many hours he had worked or how much he had billed as an expert in this matter. *Id.* Other than disclosure of his hourly rate, neither Mr. Pierce's initial or rebuttal report contained "a statement

---

[1] Pierce's initial report contains 145 exhibits in PDF form identifying time entries that he considers improper; his rebuttal report contains another 35 such PDFs.  These PDFs comprise many hundreds of pages in total.  The same billing entry will appear in more than one PDF exhibit if Pierce adjudged that the time entry reflected more than one improper billing practice.  There are *no* exhibits to his report that disclose his calculations of the final "net" deductions that he applied.

of the compensation to be paid for the study and testimony in the case" as required by Fed. R. Civ. P. 26(a)(2)(B)(vi). Defendants are therefore required to produce Mr. Pierce's invoices, as requested in the April 21 subpoena. Contrary to Illinois National's objections, this information is not protected by Rule 26, which specifically exempts from protection communications that "relate to compensation for the expert's study or testimony." Fed. P. Civ. P. 26(b)(4)(C)(i).

Third, Mr. Pierce testified that the documents that he collected and reviewed regarding the qualifications of the defense lawyers whose fees he analyzed were collected for him by his associate Blake Gibbs. *Id.* He further testified that he reviewed and considered these qualification documents in connection with the formation of his opinions, and that the electronic documents are saved in a folder on his computer system. Mr. Pierce did not include these documents in his report, nor did Defendants produce them in response to Plaintiff's subpoena—despite the fact that they are plainly responsive to the request for "[a]ny and all Documents… considered by the deponent in the formation of any opinion relating to this Action." These documents are also discoverable because they are "facts or data considered by the witness in forming" the opinions the witness will express. Fed. R. Civ. P. 26(a)(2)(B)(ii).

Fourth, Mr. Pierce testified that he has saved on his computer the full version of the "Real Rate Reports" that he excerpted in his expert reports as support for his opinions that the rates charged by the defense lawyers in the *Goldentree* action exceeded the prevailing rates for lawyers of similar experience in the Las Vegas area. *Id.* Like the qualifications documents, the full versions of the Real Rate Reports are responsive to Plaintiff's April 21 subpoena and discoverable pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii).

**B.    Eric Volk**

Eric Volk is one of Defendants' two witnesses on the question of consequential damages resulting from Defendants' wrongful denial of coverage.  Shepard Decl. ¶ 6.

On April 28, Plaintiff served a subpoena on Defendants seeking documents relied upon by Mr. Volk.  On April 29, Defendants served responses and objections refusing to produce any additional documents.  Ex. 3 (Objections to Subpoena to Eric Volk).

///

Mr. Volk was deposed earlier today, May 6. Shepard Decl. ¶ 8. His deposition revealed that Mr. Volk reviewed and relied upon notes prepared by his colleague Eric Barnes and an article published in the *Journal of Accountancy*.  Those documents have not yet been produced.

## IV.   THE PARTIES HAVE NOT COMPLETED THE MEET AND CONFER PROCESS REGARDING THE REQUESTED DISCOVERY

The parties have not exhausted the meet-and-confer process regarding the discovery requests described in this motion.  Plaintiff is filing this motion for extension to avoid any suggestion that Plaintiff waived Plaintiff's rights by not filing a motion prior to the May 6 expert discovery deadline.

On April 29, Plaintiffs' counsel requested native versions of Mr. Pierce's exhibits and "backup" spreadsheets. Shepard Decl. ¶ 9. Defense counsel responded by email: "we served you with his exhibits and objected to the deposition notice." Ex. 4.

During the Pierce deposition on May 3, Plaintiffs' counsel requested on the record these native spreadsheets and most of the other documents identified herein. Shepard Decl. ¶10. Defense counsel did not respond.

On May 4, the day after the Pierce deposition, Plaintiffs' counsel sent an email requesting all the additional documents discussed herein relating to Pierce's opinions. Ex. 4. This email also attached proposed subpoenas to be served on Mr. Bychel and Mr. Bychel's auditing firm.  (Those subpoenas may be necessary because Mr. Pierce's testimony indicated that he does not personally have access to the computer program used to generate his own report exhibits; only Mr. Bychel's firm has access.)   Defense counsel have demanded to meet and confer on those requests.  Shepard Decl., ¶ 11; Ex. 4.

Also on May 4, Plaintiffs' counsel requested Defendants' position regarding the instant motion to extend the expert discovery period for purposes of seeking the additional documents relating to Pierce's opinions.  Ex. 4.  Defense counsel oppose this request.  Shepard Decl., ¶ 12, Ex. 4.

Earlier today, on May 6, Plaintiffs' counsel deposed Mr. Volk and requested, on the record, the documents identified in this motion.  Defense counsel did not respond.  After the conclusion

of the Volk deposition, Plaintiffs' counsel sent an email requesting these documents.   Ex. 5. Defense counsel have not responded.   Shepard Decl., ¶ 13.

**V.      ARGUMENT: GOOD CAUSE EXISTS TO EXTEND DISCOVERY DEADLINE**

Good cause exists to extend the expert-discovery deadline so that Plaintiff may continue to seek the documents described in this motion. Plaintiff has been unable to obtain the documents and information described here, prior to May 6, despite Plaintiff's diligent efforts to do so. *See Tanya Victor v. Walmart, Inc.*, 2021 WL 3745190, at *2 (D. Nev. Apr. 8, 2021) ("Good cause to extend a discovery deadline exists if it cannot reasonably be met despite the diligence of the party seeking the extension.").   Defendants have either not responded to Plaintiffs' requests (regarding the Volk documents) or have demanded a meet-and-confer on Plaintiff's requests (regarding the documents relating to Pierce's opinions).

This extension will not affect the next deadline in this matter: June 3.  That is the deadline for service of dispositive motions.  Plaintiff is prepared to meet that deadline even if the discovery, discussed in this motion, is still ongoing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**CONCLUSION**

2       Plaintiff respectfully requests leave to continue to seek the documents and information,

3  described herein, relating to the expert opinions expressed by Defendants' experts Pierce and Volk,

4  after the expiration of the May 6 close of expert discovery deadline.

5       DATED this 6th day of May 2022.

6

7                                                  GARMAN TURNER GORDON LLP

8                                                  */s/ Dylan T. Ciciliano*
                                                   GREGORY E. GARMAN, ESQ.
9                                                  Nevada Bar No. 6654
                                                   TALITHA GRAY KOZLOWSKI, ESQ.
10                                                 Nevada Bar No. 9040
                                                   DYLAN CICILIANO, ESQ.
11                                                 Nevada Bar No. 12348
                                                   7251 Amigo Street, Suite 210
12                                                 Las Vegas, Nevada 89119

13
                                                   -and-
14
                                                   SUSMAN GODFREY LLP
15                                                 ALEXANDRA WHITE, ESQ. (*pro hac vice*)
                                                   STEVEN M. SHEPARD, ESQ. (*pro hac vice*)
16                                                 FLOYD SHORT, ESQ. (*pro hac vice*)
                                                   RAVI BHALLA, ESQ. (*pro hac vice*)
17                                                 TYLER FINN, ESQ. (*pro hac vice*)
                                                   1000 Louisiana Suite 5100
18                                                 Houston, TX 77002-5096
                                                   Tel: (713) 651-9366
19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned, an employee of Garman Turner Gordon LLP, hereby certify that on 6th day of May 2022, she caused the foregoing **PLAINTIFF EB HOLDINGS II, INC.'S MOTION FOR LEAVE TO SEEK DISCOVERY FROM DEFENSE EXPERTS AFTER MAY 6, 2022** to be filed on the Court's docket via the CM/ECF system, which will effect service on all counsel of record for all parties in this action.

*/s/ Tonya Binns*
An employee of
GARMAN TURNER GORDON LLP