UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EB HOLDINGS II, INC., et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>ILLINOIS NATIONAL INSURANCE COMPANY, et al.,<br><br>Defendant(s). | Case No. 2:20-CV-2248 JCM (NJK)<br><br>ORDER |

Presently before the court is defendant Continental Casualty Company ("Continental")'s motion for summary judgment. (ECF No. 151). Plaintiffs EB Holdings II, Inc. ("EBH") and QXH, Inc. ("QXH") (collectively, "plaintiffs") filed a response. (ECF No. 192). Continental replied. (ECF No. 201).

Also before the court is defendant Illinois National Insurance Company ("Illinois National")'s motion for summary judgment. (ECF No. 153). Plaintiffs filed a response (ECF No. 189), to which Illinois National replied. (ECF No. 202).

Also before the court is Federal Insurance Company ("Federal Insurance")'s motion for summary judgment. (ECF No. 154). Plaintiffs filed a response (ECF No. 193), to which Federal Insurance replied. (ECF No. 203).

Also before the court is plaintiffs' motion for summary judgment. (ECF No. 169). Federal Insurance, Illinois Insurance, and Continental each filed a response (ECF Nos. 184, 185, 186), to which plaintiffs replied. (ECF No. 204).

**I.    INTRODUCTION**

Plaintiffs purchased insurance policies from defendants for coverage for *inter alia* certain litigation expenses. Plaintiffs were involved in litigation in state court and allege defendants are obligated to provide coverage. Defendants disagree.

**James C. Mahan**
**U.S. District Judge**

*a. Undisputed facts*

EBH's corporate predecessor borrowed 600 million euros (€600,000,000) pursuant to a payment-in-kind term loan. Interest in the loan was transferred among parties, until it was eventually collateralized into notes (the "notes"). Once the GoldenTree Group Master Fund, Ltd. ("GoldenTree Group"), acquired notes at an aggregate discount on the secondary market, it facilitated transactions to transform the noteholders back into lenders.

In 2016, the GoldenTree Group subsequently brought suit against EBH, Howard Meyers ("Meyers"),[1] and several other defendants for fraud-based claims. This suit accelerated loan repayment, instigating another related lawsuit that named QXH as a defendant (the "GoldenTree action"). The GoldenTree action was ultimately dismissed with prejudice in 2019.

For years prior to and during the proceedings of the GoldenTree action, plaintiffs were insured by defendants. Plaintiffs had a primary policy with Illinois National and several follow form[2] excess policies with all defendants that provide for certain types of litigation coverage. Plaintiffs filed a claim with defendants regarding their involvement in the GoldenTree action. All three defendants denied coverage.

*b. Disputed facts*

The relevant facts that are in dispute relate to plaintiffs' primary policy with Illinois National and its 2015 insurance renewal application (the "2015 application"). Illinois National contends plaintiffs made a material misrepresentation on the 2015 application by submitting financial information showing long-term debt valued at $29.9 million rather than their actual debt of $1.6 billion. If the actual value of long-term debt had been disclosed, Illinois National argues, it would have not issued the policy to plaintiffs, or at the very least, it would have issued the policy pursuant to different terms and conditions.

Plaintiffs contend that they did not provide any financial information showing long-term debt. They further argue that even if they did provide some record of debt, it should not matter because (1) the misrepresentation was not material, (2) Illinois National waived its right to rescind the policy because it had constructive knowledge of the actual debt, (3) plaintiffs were

---

[1] Meyers served as the president, treasurer, secretary, sole shareholder, and director of QXH as well as the president, treasurer, secretary, and chairman of the board of EBH.

[2] A follow form excess policy adopts certain provisions the underlying insurance policy (i.e. "follows form") and provides excess coverage.

**James C. Mahan**
**U.S. District Judge**

- 2 -

unaware of the misrepresentation, and (4) the doctrine of laches precludes rescission of the policy.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

James C. Mahan
U.S. District Judge

- 3 -

that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. DISCUSSION

Illinois National moves for summary judgment, arguing that plaintiffs cannot establish that they are entitled to coverage under the primary or excess insurance policies. (*See* ECF No. 153). As an initial matter, the court conducts a conflict-of law-analysis.

*a. Conflict of law*

The parties dispute whether Nevada or Texas law governs, specifically as to material misrepresentations made on the application for insurance. (*See* ECF Nos. 87, 153). First, the court determines whether a conflict of law exists, which occurs when two or more states with different law have legitimate interests in the litigation. *See Tri-County Equip. & Leasing, LLC v. Klinke*, 128 Nev. 352, 355 (2012). This court finds that both Nevada and Texas have an interest in the instant litigation, as the action giving rise to the dispute occurred in Nevada, and plaintiffs

**James C. Mahan**
**U.S. District Judge**

- 4 -

have their principal headquarters in Texas. Further, the laws of both Nevada and Texas differ as to materiality of a misrepresentation. Thus, a conflict-of-law analysis is necessary. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487 (1941).

Nevada uses the "substantial relationship" test, considering five factors determining whether a state possesses a substantial relationship with the contract: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* The transaction must also not violate a strong public policy of Nevada. *Consol. Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1307–08 (1998) (citation omitted).

The first and second factors are inconsequential to the analysis here as neither party has provided information relevant thereto. The third, fourth, and fifth factors favor Nevada law: the insurance policy dispute was triggered because of the GoldenTree action, which was filed in Nevada, the insureds are Nevada corporations, and no party has domicile, residence or was incorporated in Texas. Therefore, this court will apply Nevada law.

*b. Nevada law*

Illinois National argues that "Nev. Rev. Stat. § 687B.110 does not require an insurer to provide coverage for a claim when there are material misrepresentations, omissions, concealment of facts, or incorrect statements in an application for insurance." (ECF No. 153 at 13).

Under NRS § 687B.110, Illinois National must show that the misrepresentations, omissions, concealment of facts, and incorrect statements were:

> (1) fraudulent, (2) [m]aterial either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) [t]he insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The statute is written disjunctively; any of the three subsections set forth in the statute may preclude coverage. Illinois National argues that either subsection (2) or (3) is sufficient to the disputed application for insurance. (*See* ECF No. 153). Illinois National also contends that the policy shall be void where "the particulars and statements contained in the application are not accurate and complete and materially affect either the acceptance of the risk or the hazards

**James C. Mahan**
**U.S. District Judge**

- 5 -

assumed by the Insurer under the policy." (ECF No. 149-10 at 65). Further, the policy does not provide coverage for "any Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations." (*Id.* at 67).

Plaintiffs argue that (1) plaintiffs made an omission rather than a misrepresentation, (2) there exists a material dispute of fact as to the materiality of the alleged misrepresentation, (3) plaintiffs waived their right to rescind the policy and thus deny coverage, (4) there is no evidence that plaintiffs were aware of the alleged misrepresentation, and (5) the doctrine of laches precludes an assertion of material misrepresentation. (*See* ECF No. 189).

(i) Misrepresentation

Illinois National asserts that EBH's debt was 58 times the amount it submitted on plaintiffs' application for insurance as shown by a screenshot of the application showing "12.31.2014 Attached Financials" in response to Illinois National's request for "Total Assets, Total Liabilities, Total Revenue, Net Income, Net Loss, and Cashflow from Operations." (ECF No. 202 at 3).

It cannot be disputed that the 2015 application showed long-term debt of $29,900,000. (*See* ECF No. 149-9). Plaintiffs' opposition provides a screenshot proving that financials were attached, and Illinois National presents these financials showing long-term debt in the amount of $29,900,000. (ECF No. 189 at 4). Plaintiffs fail to present evidence to the contrary, and conclusory allegations unsupported by factual data are insufficient to avoid summary judgment. (ECF No. 189); *see List*, 880 F.2d at 1045.

(ii) Materiality

The parties dispute whether the plaintiffs' misrepresentation was material. (ECF Nos. 153, 189). Materiality under NRS § 687B.110(2) depends on whether the misrepresentation affected the insurer's decision to accept the risk and/or the terms with which the policy is issued.

The court finds that Illinois National has provided sufficient evidence to conclude that the misrepresentation was material via deposition testimony of Grant Merrill, one of Illinois National's corporate representatives. (*See* ECF No 153-9). Merrill testified that had the $1.68 billion in long-term debt been disclosed, the account would have been referred to the insurer's bankruptcy swat team to evaluate whether to insure the solvency-challenged risks. (ECF No. 153 at 15). At a minimum, Merrill testified that Illinois National would have included a

James C. Mahan
U.S. District Judge

- 6 -

bankruptcy exclusion—which it has done in a "myriad of circumstances"—that would have barred coverage for the instant claim. (ECF No. 153-9 at 116:22–25).

Plaintiffs fail to provide any evidence that contradicts the testimony of Merrill, which shows that the misrepresentation, had it been disclosed, would have altered what terms would have been included with the policy. *See* NRS § 687B.110. Thus, plaintiffs' misrepresentation was material.

        (iii)  Waiver

Plaintiffs contend Illinois National waived its right to rescission because it had knowledge of the misrepresentation in the 2015 application. (*See* ECF No. 189). Under Nevada law, an insurer waives its power to rescind an insurance contract by issuing the policy with knowledge that the insureds fraudulently misrepresented a material fact in their application for insurance. *Violin v. Fireman's Fund Ins. Co.*, 406 P. 2d 287 (Nev. 1965). In support of this contention, Plaintiffs argue that both the insurance policy and Nevada law charge Illinois National with knowledge of the information already in its files. (ECF No. 189 at 21).

First, plaintiffs suggest the policy contractually binds Illinois National with knowledge of EBH's long-term debt that was disclosed in 2008, 2009, 2010, 2012, and 2013. (*Id.* at 14). Further, plaintiffs aver that Illinois National had constructive knowledge of EBH's long term debt because plaintiffs' previous renewal applications accurately disclosed debt, such as the 2013 application showing $1.437 billion of long-term debt. (*Id.*). Plaintiffs contend that previous disclosures enabled Illinois National to run a calculation (with two years left on the loan and an 11% interest rate) to "easily estimate" that EBH's long-term debt amounts to about $1.77 billion, before any currency adjustment. (*Id.*). Illinois National argues that this outdated information, constructive knowledge is insufficient waive the right to rescission, and the duty to verify information on an application is unsupported by caselaw. (ECF No. 202 at 5). Further, it asserts that debt in previous years is not evidence of debt in 2015. (*Id.* at 6).

Plaintiffs fail to set forth specific facts that show a genuine issue for trial. It is undisputed that Illinois National knew of plaintiffs' long-term debt prior to 2015, but plaintiffs have failed to show that Illinois National was aware of the long-term debt in 2015.

It cannot be disputed that the renewal application in 2015 showed long-term debt amounting to $29,900,000. (ECF No. 189 at 4). Further, Illinois National was entitled to rely on plaintiffs' representations in its application. *See Tenzer* ex rel. *A.T. v. Minn. Life Ins. Co.*, 826 F.

**James C. Mahan**
**U.S. District Judge**

- 7 -

App'x 654, 655 (9th Cir. 2020). Plaintiffs provide no authority that Nevada law imposes a duty to further investigate an application for insurance. (ECF No. 189).

It is well established that an insurer is chargeable with knowledge of a misrepresentation when "full information" about the disputed issue is present in its own files. *Violin*, 406 P. 2d at 461. Plaintiffs have not set forth specific facts or evidence showing "full information" was present in Illinois National's files, and constructive knowledge does not amount to "full information." Illinois National thus did not have knowledge of the misrepresentation. *See Minn. Life Ins. Co.*, 826 F. App'x at 655.

(iv) Lack of awareness

Plaintiffs attempt to argue—without supporting caselaw—that Illinois National has no evidence that Meyers, or anyone else affiliated with plaintiffs, was aware of the supposed misrepresentation and thus it cannot serve as a basis for denial of coverage. (ECF No. 189 at 6). This argument is without merit. Illinois National need not prove that plaintiffs were aware of the alleged misrepresentation. It is enough that a misrepresentation was made.

(v) Laches

Plaintiffs also argue that Illinois National asserting its defense more than six years after plaintiffs seek coverage would cause severe prejudice. (ECF No. 189 at 17). Plaintiffs argue that the delay caused severe prejudice by requiring them to reconstruct the years-old 2015 application, but plaintiffs have had no problem reconstructing insurance applications dating back to 2008. (*Id.*). Thus, plaintiffs' laches argument is unpersuasive.

*c. Excess policies*

It is undisputed that the excess policies follow form to the primary policies. Under Nevada law, "[t]here is no duty to defend where there is no potential for coverage." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (internal quotation marks omitted). Because coverage is not available under the primary policy, no coverage is available under the Illinois National, Continental, and Federal Insurance excess policies. Continental and Federal Insurance's motions for summary judgment are thus GRANTED.

IV. **CONCLUSION**

Accordingly, consistent with the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Illinois National's motion for summary judgment (ECF No. 153) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that Continental's motion for summary judgment (ECF No. 151) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Federal Insurance's motion for summary judgment (ECF No. 154) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (ECF No. 169) be, and the same hereby is, DENIED as moot.

The clerk of the court is instructed to enter judgment in favor of defendants and close this case.

DATED March 31, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**