**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EB HOLDINGS II, INC.; QXH II, INC., | No.23-15556 |
| *Plaintiffs-Appellants*, | D.C. No. 2:20-cv-02248-JCM-NJK |
| v. | |
| ILLINOIS NATIONAL INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; FEDERAL INSURANCE COMPANY, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted March 4, 2024
Las Vegas, Nevada

Filed July 29, 2024

Before: MILAN D. SMITH, JR., MARK J. BENNETT,
and DANIEL P. COLLINS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Mark J. Bennett

# SUMMARY[*]

## Choice of Law

The panel reversed the district court's summary judgment in favor of insurers in a lawsuit filed by EB Holdings II, Inc. and QXH II, Inc. (together, the Insureds) seeking coverage for the legal fees and expenses they incurred to defend against another lawsuit in which they were accused of fraudulently inducing others to purchase notes backed by an interest in repayment of their long-term debt.

Applying Nevada law, the district court granted summary judgment to the insurers on their affirmative defense that the Insureds made a material misrepresentation in their renewal application for insurance by failing to disclose their significant long-term debt.

As a threshold matter, the panel held that the Insureds did not waive their argument that Texas law applied to the affirmative defense of material misrepresentation.

The panel held that the district court erred in concluding that Nevada law, and not Texas law, governs the affirmative defense. Federal courts must apply the choice-of-law rules of the forum state, which is Nevada. Nevada tends to follow the Restatement (Second) of Conflict of Laws in determining choice-of-law questions involving insurance contracts. Section 187 of the Restatement permits the parties within broad limits to choose the law that will affect their contract.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Although it was a close question whether the parties clearly chose Texas law to govern the affirmative defense of material misrepresentation, the panel held that it need not decide this question. The substantial relationship test set forth in § 188 of the Restatement leads to the application of Texas law, regardless of § 187: The underwriting process largely occurred through agents based in Texas, and the Insureds are both headquartered there.

Applying Texas law, the panel held that reversal was required because there were material disputes of fact that precluded granting summary judgment on the affirmative defense of material misrepresentation. The panel declined to affirm the judgment on alternative grounds, and remanded to the district court so that it could evaluate in the first instance the other issues briefed by the parties in their summary judgment motions.

Concurring, Judge Bennett agreed with the majority on everything except its decision not to decide whether the parties chose Texas law to govern the affirmative defense of material misrepresentation under § 187 of the Restatement. In his view, Endorsement #2 to the policy reflected the parties' clear intent for Texas law to govern.

4    EB HOLDINGS II, INC. V. ILLINOIS NAT'L INSURANCE CO.

## COUNSEL

Steven M. Shepard (argued) and Ravi Bhalla, Susman Godfrey LLP, New York, New York; Jessica Moran and Thomas Birsic, K&L Gates LLP, Pittsburgh, Pennsylvania; Dylan T. Ciciliano, Garman Turner Gordon LLP, Las Vegas, Nevada; Floyd G. Short, Susman Godfrey LLP, Seattle, Washington; Alexandra White, Susman Godfrey LLP, Houston, Texas; for Plaintiffs-Appellants.

Bennett E. Cooper (argued), Dickinson Wright PLLC, Phoenix, Arizona; Carleton R. Burch and Kenneth D. Watnick, Anderson McPharlin & Connors LLP, Las Vegas, Nevada; Illinois National Insurance Company, et al..

Jeffrey D. Olster, Lewis Brisbois Bisgaard & Smith LLP, Las Vegas, Nevada; for Defendant-Appellee Federal Insurance Company.

Richard A. Simpson (argued) and Charles Lemley, Wiley Rein LLP, Washington, D.C.; Leland H. Jones, IV, Lavin Rindner Duffield LLC, Washington, D.C.; Chad C. Butterfield, Wilson Elser, Las Vegas, Nevada; for Defendant-Appellee Continental Casualty Company.

## OPINION

M. SMITH, Circuit Judge:

EB Holdings II, Inc. (EBH II) and QXH II, Inc. (QXH II) (together, the Insureds) seek coverage from their primary and excess insurers for the legal fees and expenses they incurred to defend against another lawsuit in which they were accused of fraudulently inducing others to purchase notes backed by an interest in repayment of their long-term debt. The district court granted summary judgment to the insurers on their affirmative defense that the Insureds made a material misrepresentation in their renewal application for insurance by failing to disclose their significant long-term debt. In doing so, the district court held that Nevada law, as opposed to Texas law, governed the insurers' affirmative defense of material misrepresentation. We reverse because the district court erred in its choice-of-law analysis.

## FACTUAL BACKGROUND

The Insureds are holding companies incorporated in Nevada and headquartered in Dallas, Texas. In 2015, the Insureds had dozens of subsidiaries, through which the Insureds operated battery recycling facilities and manufactured supplies for the oil exploration industry. EBH II's principal asset was ownership of 86.9% of Eco-Bat Technologies, Ltd. (Eco-Bat), a supplier of recycled lead based in the United Kingdom. Howard Meyers was a Director and the President of both Insureds in 2015. Albert Lospinoso was the other Director of EBH II.

In the summer of 2015, the Insureds sought to renew their Directors and Officers and Private Company Liability Insurance Policy with Illinois National Insurance Company

(Illinois National), an American International Group, Inc. (AIG) subsidiary organized pursuant to Illinois law with a principal place of business in New York. The Insureds were seeking to renew coverage not only for themselves but also for dozens of their subsidiary companies, including Eco-Bat and Eco-Bat's subsidiaries. To facilitate the renewal, the Insureds' insurance broker sent numerous documents to AIG's underwriters that summer relating to the finances of the Insureds and their subsidiaries. These documents included a consolidated balance sheet of Eco-Bat America, LLC (EBA), a wholly owned subsidiary of Eco-Bat. This document represented that the subsidiary, EBA, had $29.9 million in long-term debt.

On September 18, 2015, the Insureds' broker emailed AIG's underwriters the Insureds' "PrivateEdge Renewal Application," signed by Meyers. On the first page of the form, Question 1 in Section B asked the Insureds to "provide the following Financial Information for the Applicant and its Subsidiaries." Immediately below Question 1 was a chart asking for information on the Insureds' total assets, liabilities, and revenues. Jennifer Hopson, the lead AIG underwriter responsible for reviewing the Insureds' renewal application in 2015, testified that it was "common" for applicants to leave this chart blank, and instead, incorporate attached financials from email correspondence concerning the application. In the same email attaching the "PrivateEdge Renewal Application," the Insureds' broker also attached a document titled "2015-2016 QXH II and EBH II Financial Information," which disclosed the Insureds' total assets and revenues but said nothing about their total debt. There is no evidence in the record of a specific transmission in 2015 attaching EBH II's balance sheet for that year, which would have disclosed that EBH II

held significant long-term debt, exceeding $1.6 billion. There is, however, evidence in the record showing that EBH II disclosed its long-term debt in financial statements in connection with previous renewal applications for insurance sent to AIG's underwriters, such as a "balance sheet" sent to AIG in 2013 that described EBH II's long-term debt exceeding $1.4 billion. There is also evidence showing that in 2014 AIG waived the requirement that the Insureds submit any "Financials for EB Holdings [II]" in connection with their renewal application.

In August 2016, GoldenTree Master Fund, Ltd. (GoldenTree) filed a lawsuit in Nevada state court against EBH II, Meyers, and Lospinoso (the GoldenTree Action). The complaint was later amended to include as co-plaintiffs several other holders of notes that were purportedly backed by an interest in EBH II's repayment of its long-term debt and to add as an alter ego co-defendant QXH II. GoldenTree and the other noteholders alleged, among other things, that EBH II and Meyers had fraudulently induced them to purchase the notes by failing to disclose that Eco-Bat had engaged in market manipulation and price fixing in Europe. The Insureds and Meyers denied the allegations.

In September 2016, the Insureds gave notice to Illinois National of the GoldenTree Action, and asked Illinois National to pay for their defense. In August 2017, Illinois National sent the Insureds a final letter denying coverage. The letter described, in some detail, GoldenTree's allegations about EBH II's long-term debt. However, Illinois National's 2017 coverage-denial letter said nothing about any alleged misrepresentation by the Insureds about EBH II's debt in their 2015 renewal application and did not provide that as a reason for denying coverage. Instead, the letter denied coverage for entirely different reasons,

including that the insurance policies specifically excluded coverage for claims brought against security holders of Eco-Bat.

The Insureds ultimately incurred more than $40 million in legal fees and expenses in defending themselves, Meyers, and Lospinoso against GoldenTree. In 2019, GoldenTree, the Insureds, and Meyers reached a settlement. Lospinoso passed away before that settlement occurred.

## PROCEDURAL HISTORY

The Insureds filed this lawsuit in Nevada federal court in December 2020. In their second amended complaint, the Insureds alleged that Illinois National had breached its primary and excess insurance policies, acted in bad faith, and violated Nevada's and Texas's fair-claims-practices laws. The Insureds also sued two of their excess insurers, Continental Casualty Company (Continental) and Federal Insurance Company (Federal) (together, with Illinois National, Defendants). Continental's and Federal's excess policies followed form to Illinois National's primary policy, meaning that Continental and Federal agreed to cover losses incurred by the Insureds that exceeded the limits of the primary policy and of any lower-level excess policy guaranteed by Illinois National. The Insureds alleged that Continental and Federal breached their policies by denying coverage for the GoldenTree Action.

In the summer of 2022, the parties filed cross-motions for summary judgment on numerous issues. Illinois National argued that the court should grant it summary judgment because the Insureds' "material misrepresentations, omissions, and failure to disclose over $1.6 billion in long-term debt in their insurance application bar coverage under the [primary and excess policies]."

Illinois National contended that Nevada law should govern the affirmative defense because there are no material differences between Nevada and Texas law.

In opposition to Illinois National's motion, the Insureds argued that even though "[t]here are material differences between Texas and Nevada law regarding an insurer's 'material misrepresentation' defense," the district court did not need to "conduct a choice-of-law analysis at this time, since summary judgment should be denied based on the numerous and material disputes of fact regarding two elements that are required by both [Texas and Nevada law], namely, falsity and materiality." However, if the court found that the issues of falsity and materiality "were insufficient to deny Illinois National's motion," then the Insureds argued that the district court would "have to conduct a choice-of-law analysis" because "Texas law requires Illinois National to prove two additional elements" to succeed on the defense—i.e., (1) the Insureds' intent to deceive, and (2) that Illinois National gave notice to the Insureds of its refusal to be bound by the policy within 90 days of discovering the falsity of the application. The Insureds offered several reasons why, pursuant to Nevada's choice-of-law rules, "Texas law plainly applies to the question of whether material misrepresentations were made, during the underwriting process, that now permit Illinois National to deny coverage under the [policies]." The Insureds contended that there were "material disputes of fact as to [these] two Texas-law elements."

On March 31, 2023, the district court granted summary judgment to Illinois National and the excess insurers. Specifically, the district court held that Nevada law governs Illinois National's affirmative defense that the Insureds materially misrepresented their long-term debt in their 2015

renewal application.  Applying Nevada law, the court then concluded that Illinois National was entitled to summary judgment on that affirmative defense.  And because this meant no coverage was available to the Insureds under Illinois National's policies, the district court also held that coverage was unavailable under Continental's and Federal's excess policies.  The district court did not reach the merits of the parties' arguments pertaining to whether coverage for the GoldenTree Action was barred by exclusions in the policies. The Insureds timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  "We review choice-of-law questions de novo, but review underlying factual findings for clear error."  *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020) (cleaned up).      We review a grant of summary judgment de novo.  *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018).

## ANALYSIS

## I.   The Insureds Did Not Waive Their Argument That Texas Law Governs Illinois National's Affirmative Defense of Material Misrepresentation.

As a threshold matter, we reject Illinois National's contention that the Insureds waived their argument that Texas law applies to Illinois National's affirmative defense. Illinois National asserts that the Insureds failed to pursue that argument in the summary judgment briefing below, but that assertion is not supported by the record.  The Insureds offered several cogent reasons to the district court in their opposition to Illinois National's motion for summary judgment as to why, pursuant to Nevada's choice-of-law

rules, "Texas law plainly applies to the question of whether material misrepresentations were made, during the underwriting process, that now permit Illinois National to deny coverage under the [policies]." For instance, the Insureds pointed to several facts in the record "indicat[ing] that the parties intended for Texas law to govern the underwriting process," pursuant to § 187 of the Restatement (Second) of Conflict of Laws (the Restatement), citing comment (a). The Insureds also argued that these same facts indicated "that Texas has the 'most significant relationship' to the underwriting" process pursuant to § 188 of the Restatement. Accordingly, the Insureds "sufficiently" raised their argument that Texas law governed the affirmative defense in order "for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989).

Illinois National's related assertion that the Insureds impermissibly flip-flopped on the issue—i.e., they first urged the application of Nevada law as opposed to Texas law—is similarly without merit. In making that assertion, Illinois National relies on a much earlier argument that the Insureds made in connection with their motion for leave to file a second amended complaint, long before the parties filed their cross-motions for summary judgment and litigated the affirmative defense of material misrepresentation. Shortly before the Insureds filed that motion for leave, Illinois National had objected to various requests for admissions from the Insureds regarding its transactions of insurance business in Nevada on the basis that the policies at issue were issued in Texas and therefore causes of action arising under Nevada's Unfair Claims Settlement Practices Act did not apply. In response to that objection, the Insureds offered several reasons to the district court in its motion to amend explaining why Nevada law might ultimately apply

to their claims regarding Illinois National's handing of their claims for coverage regarding the GoldenTree Action. However, given that Illinois National was objecting to the Insureds' requests for admissions on the basis that Texas law applied and not Nevada law, the Insureds sought leave from the district court to add a Texas-law cause of action pertaining to Defendants' handling of the Insureds' claims for coverage. In seeking leave from the court to add this cause of action pursuant to Texas law, the Insureds expressly cautioned that the choice-of-law dispute was "not yet ripe" for the court to decide.

Later, when litigating summary judgment, the Insureds still maintained that the court could defer on the choice-of-law issues because of their belief that summary judgment could be denied based on the disputes of fact regarding the shared falsity and materiality elements of a material misrepresentation affirmative defense under both Texas and Nevada law. However, the Insureds also argued that if the court found that the issues of falsity and materiality were insufficient to deny Illinois National's motion, then the district court would need to conduct a choice-of-law analysis because Texas law requires proving two unique, additional elements to succeed on the defense. On this point, the Insureds clearly argued in favor of Texas law.

Accordingly, we reject Illinois National's notion that the Insureds waived their argument that Texas law governs the affirmative defense, and we proceed to consider the merits of that choice-of-law question on appeal.

## II. The District Court Erred in Concluding That Nevada Law, and Not Texas Law, Governs the Affirmative Defense.

It is well-established in the federal courts that a conflict-of-laws analysis may result in the laws of different jurisdictions applying to different issues in the same case. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981). "It is [also] well-established that in diversity cases, such as this one, 'federal courts must apply the choice-of-law rules of the forum state.'" *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021) (quoting *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987)). Here, the forum state is Nevada.

"Nevada tends to follow the Restatement . . . in determining choice-of-law questions involving contracts, generally, and insurance contracts, in particular." *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014) (internal citations omitted). That includes § 187 of the Restatement, which, according to the Nevada Supreme Court, permits the parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Invs.*, 603 P.2d 270, 273 (Nev. 1979). Nevertheless, where an insurance policy does not evince a clear choice-of-law governing a particular issue, the Nevada Supreme Court has instructed its courts to apply § 188 of the Restatement, i.e., the "substantial relationship" test. *See, e.g.*, *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 789–90 (Nev. 1990). That test requires courts to consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of

business of the parties." Restatement § 188. Each factor of the test must be "evaluated according to [its] relative importance with respect to the particular issue" that gave rise to the choice-of-law dispute in the first place. *Id.*

### A. We Need Not Decide Whether the Parties Chose Texas Law to Govern the Affirmative Defense Pursuant to § 187 of the Restatement.

In its summary judgment decision, the district court failed to address the Insureds' argument that § 187 of the Restatement required the application of Texas law to the issue of whether material misrepresentations were made on the application for insurance and instead only analyzed that choice-of-law issue pursuant to § 188 of the Restatement. On appeal, the Insureds renew their argument that § 187 requires Texas law to govern the affirmative defense of material misrepresentation.

Section 187 of the Restatement permits the parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Ferdie*, 603 P.2d at 273. Parties typically effectuate that choice through an express choice-of-law provision in their contract. *See* Restatement § 187 cmt. a ("When the parties have made such a choice, they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect."). It is undisputed that the insurance policy in this case lacks such a provision. Nevertheless, commentary to the Restatement makes clear that an express choice-of-law provision is not required for § 187 to apply to a particular issue. *See*

Restatement § 187 cmt. a.[1]  "[T]he fact that [a] contract contains legal expressions, or makes reference to legal doctrines, that are peculiar to the local law of a particular state may provide persuasive evidence that the parties wished to have th[e] law [of that particular state] applied." *Id.*

Here, the closest possible indication of the parties' intent for Texas law to govern the affirmative defense of material misrepresentation is Endorsement #2 to the policy, which is titled "Texas Amendatory Endorsement Cancellation and Nonrenewal."  As the Insureds correctly note, Endorsement #2 employs identical language found in § 551.052 of the Texas Insurance Code, which permits cancellation "during the term of the policy" due to "fraud in obtaining coverage." Tex. Ins. Code § 551.052(c)(1).  The Insureds further argue that "[b]ecause Endorsement #2 is concerned (in part) with *cancelling* the policy based on *fraud*, [it] is particularly probative evidence of the parties' intent to have Texas law govern the affirmative defense at issue here."

On the other hand, it is hardly a unique proposition for a state's substantive law to allow for the cancellation of an insurance policy during its term due to fraud in obtaining coverage.  *See, e.g.*, Nev. Rev. Stat. § 687B.320(1)(c) (providing for "midterm cancellation" due to "fraud . . . in the obtaining of the policy").  Moreover, the Insureds have

---

[1] The Insureds failed to provide us with a case in which a Nevada court specifically applied comment (a) of § 187 of the Restatement to hold that parties to a contract chose a certain jurisdiction's laws to govern a particular issue despite the lack of an express choice-of-law clause.  Nor have we found one.  However, the Nevada Supreme Court has previously relied on other commentary in § 187 to resolve choice-of-law disputes. *See, e.g.*, *Progressive*, 327 P.3d at 1064 (applying Restatement § 187 cmt. g).  We see no reason to depart from that general practice here.

failed to identify any contractual language from the policy or its endorsements that specifically references the element of the affirmative defense that is peculiar to Texas law—i.e., the 90-day notice requirement. Tex. Ins. Code § 705.005(b) ("A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy[.]"). The other provisions identified by the Insureds as referencing Texas law and Texas regulatory entities have little to do with cancelling or defending against coverage due to fraud and thus do not directly speak to the parties' intent to have Texas law govern the affirmative defense of material misrepresentation.

Ultimately, we think it is a close question whether the parties clearly chose Texas law to govern the affirmative defense of material misrepresentation. Nevertheless, we need not definitively resolve that question because § 188 of the Restatement leads to the application of Texas law to the defense, regardless of § 187.

## B. Section 188 of the Restatement Requires the Application of Texas Law to the Affirmative Defense of Material Misrepresentation.

The district court concluded that Nevada law governed the affirmative defense pursuant to § 188 of the Restatement because:

> The first and second factors are inconsequential to the analysis here as neither party has provided information relevant thereto. The third, fourth, and fifth factors

> favor Nevada law: the insurance policy
> dispute was triggered because of the
> GoldenTree [A]ction, which was filed in
> Nevada, the insureds are Nevada
> corporations, and no party has domicile,
> residence or was incorporated in Texas.

This analysis, however, relies upon several clearly erroneous findings of fact.

The district court clearly erred when it stated that neither party provided information relevant to the first and second factors of § 188's substantial relationship test—i.e., the place of contracting and the place of negotiation. The Insureds, in opposition to Illinois National's motion for summary judgment, specifically argued that "the Policy was delivered in Texas," that "the underwriting itself occurred in Texas," and that the employee responsible for overseeing the Insureds' application process and AIG's lead underwriter, Hopson, were both based in Texas during the time of the renewal. Had the district court considered these arguments and recognized their factual support in the record, it would have recognized that the first two factors weighed in favor of applying Texas law to the affirmative defense. Notably, Illinois National failed to provide the district court with any facts to suggest that the underwriting process had a clear connection to Nevada.

The district court also clearly erred when it determined that "no party has domicile [or] residence . . . in Texas." The Insureds' principal places of business are both in Dallas, Texas. Contrary to Illinois National's assertion on appeal, the Insureds have never represented otherwise to the district court—that their principal place of business is somewhere other than Texas. Had the district court acknowledged that

the Insureds' principal place of business was in Texas, it would have recognized that the fifth factor also weighed in favor of applying Texas law. Illinois National is not at home in either Texas or Nevada, and the commentary to the Restatement makes clear that the Insureds' principal place of business in Texas "is a more important contact than the[ir] place of incorporation" in Nevada. Restatement § 188 cmt. e.

Upon correcting the district court's clearly erroneous factual findings, we reweigh the factors of the substantial relationship test de novo. *See Cooper*, 960 F.3d at 557. We conclude that the test requires the application of Texas law to the affirmative defense of material misrepresentation. The Restatement makes clear that each factor of the test must be "evaluated according to [its] relative importance with respect to the particular issue" that gave rise to the choice-of-law dispute in the first place. Restatement § 188. Here, the particular issue is whether Illinois National, Continental, and Federal may escape their coverage obligations because of their allegation that the Insureds made a material misrepresentation during the underwriting process. Underwriting is the process by which insurers decide which risks to insure based on representations made by applicants for insurance. Accordingly, the first and second factors of the test—the place of contracting and the place of negotiation of the contract (in other words, where those representations are made)—are highly probative of which law should apply to the affirmative defense of material misrepresentation.     As noted above, both factors overwhelmingly favor the application of Texas law.

The remaining factors do not meaningfully shift the scales away from Texas law. The third factor—the place of performance—favors the application of Nevada law. In this

coverage action, the Insureds are asking Illinois National to cover costs that were largely incurred in the state of Nevada, where the GoldenTree Action was litigated.   The fourth factor—the location of the subject matter of the contract—is inconclusive.  The Insureds sought "worldwide coverage" as they were seeking Insurance for their subsidiaries, many of which are incorporated in states other than Nevada and Texas.  The fifth factor slightly favors Texas over Nevada because the Insureds' principal place of business in Texas "is a more important contact than the[ir] place of incorporation" in Nevada.    Restatement § 188 cmt. e. Illinois National is not incorporated or headquartered in either state.

Accordingly, we conclude that § 188's substantial relationship test requires the application of Texas law to the affirmative defense of material misrepresentation.    The Insureds are headquartered in Texas and applied for and received the insurance policy in Texas.  Any attempt by their insurers to escape coverage obligations due to alleged misrepresentations that the Insureds made during the underwriting process, which largely occurred through agents based in Texas, should be governed by Texas law.**[2]**

---

[2] Because we conclude that Texas law applies to the defense of material misrepresentation, there is no reason to entertain the Insureds' broader argument that Texas law applies to the *entire* policy.  *Cf. George K. Baum & Co. v. Twin City Fire Ins. Co.*, 760 F.3d 795, 799–800 (8th Cir. 2014) (applying comment (a) to § 187 of the Restatement to hold that New York law governed an entire insurance policy that lacked an express choice-of-law clause because it "contain[ed] numerous New York-specific provisions").

### III. Because Texas Law Applies, Reversal Is Required.

Had the district court concluded that Texas law governed Illinois National's affirmative defense, then Illinois National would have needed to prove two additional elements to succeed on the defense: (1) that there was intent to deceive on the part of the Insureds; and (2) that Illinois National gave notice to the Insureds of its refusal to be bound by the policy, within 90 days of discovering the falsity of the application. Either of these elements would have precluded the district court from granting summary judgment to Illinois National on its affirmative defense.

### A. There Is a Material Dispute of Fact Over Whether the Insureds Intended to Deceive Illinois National in Their Renewal Application.

Illinois National argues that evidence of the Insureds' intent to deceive is so conclusive from the record below that we can decide the issue as a matter of law on appeal. But this argument does not withstand scrutiny. There is very little evidence in the record, if any at all, that directly shows the Insureds had the intent to deceive Illinois National when they failed to send a specific transmission in 2015 quantifying their long-term debt. Illinois National's argument that the Insureds' mere failure to provide that number in 2015 is sufficient to show their fraudulent intent minimizes the high bar for proving intent. Accordingly, we conclude that there are triable issues of fact regarding the Insureds' intent to deceive, thereby precluding summary judgment on the defense.

### B. Illinois National Failed to Provide Any Evidence Showing It Complied with Texas's Statutory Notice Requirement.

As for the 90-day notice requirement, Illinois National does not argue that it provided notice of the supposed misrepresentation within 90 days of discovering the falsity. *See* Tex. Ins. Code § 705.005(b).  Instead, Illinois National advances a legal argument that the Texas requirement of notice only applies if the insurer is rescinding the policy, as opposed to denying coverage or proving an affirmative defense in litigation over coverage.  However, several Texas appellate courts have rejected this argument and instead have held that the statute means what it says: "This statutory notice is an essential element of a defense based on misrepresentation." *Koral Indus., Inc. v. Sec.-Conn. Life Ins. Co*., 788 S.W.2d 136, 148 (Tex. App. 1990); *accord Wallace v. AmTrust Ins. Co. of Kan., Inc.*, No. 10-14-00209-CV, 2016 WL 3136875, at \*6 (Tex. App. June 2, 2016); *Myers v. Mega Life & Health Ins. Co.*, No. 07-06-0233-CV, 2008 WL 1758640, at \*3 (Tex. App. Apr. 17, 2008); *Fulgham v. Allied Prop. & Cas. Ins. Co.*, No. 05-14-00189-CV, 2015 WL 3413525, at \*4 (Tex. App. May 28, 2015).  Illinois National's reliance on a federal district court case from the Southern District of Texas to suggest the contrary is unpersuasive. *See Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2018 WL 1569718, at \*6 (S.D. Tex. Mar. 14, 2018), *report and recommendation adopted*, No. 3:17-CV-5, 2018 WL 1561816 (S.D. Tex. Mar. 30, 2018).  Not only do the federal district courts lack the authority to make definitive pronouncements on questions of state law, but the insurer in *Columbia Lloyds* did not even raise "material misrepresentation" as an affirmative defense to enforcement of the insurance contract. *See id.* at \*5.

Accordingly, we conclude that Illinois National failed to provide any evidence to demonstrate its compliance with Texas's 90-day notice requirement, thereby precluding summary judgment on the defense.

## C. The District Court Failed to Recognize Other Genuine Disputes of Material Fact That Preclude Summary Judgment on the Defense.

Texas law, like Nevada law, also requires that misrepresentations be material to sustain the affirmative defense of material misrepresentation. Tex. Ins. Code § 705.004(b); Nev. Rev. Stat. § 687B.110(2), (3). Contrary to the district court's conclusion, there also remain significant disputes of fact over whether the Insureds made a material misrepresentation in their renewal application.

First, the district court's determination that "[i]t cannot be disputed that the 2015 application showed long-term debt of \$29,900,000" relies upon a plain misreading of the document in which that representation was made.[3] That number appeared in the consolidated financial statements of EBA, a wholly owned subsidiary of Eco-Bat. This document clearly represented that the subsidiary, EBA, had \$29.9 million in long-term debt. The district court's conclusion that this document was proof of EBH II falsely representing that it, as the parent entity, had only \$29.9 million in long-term debt is simply wrong. Given that this representation about EBA's debt was not false, Illinois National would instead have to rely on the undisputed fact that the Insureds failed to make a specific transmission in

---

[3] The district court's reference to Docket Number 149-9 is likely a typographical error, as the figure "\$29,900,000" appears nowhere in that document.

2015 disclosing that EBH II held significant long-term debt, exceeding $1.6 billion, to sustain Illinois National's affirmative defense of material misrepresentation.

Second, there are significant disputes of fact over whether that omission was material to the renewal of the policies. The district court concluded otherwise because the Insureds "fail[ed] to provide any evidence that contradicts the testimony of [Grant] Merrill," one of Illinois National's corporate representatives, "which show[ed] that the misrepresentation, had it been disclosed, would have altered what terms would have been included with the policy," such as including a bankruptcy exclusion. But that analysis does not withstand scrutiny. As the Insureds highlight in their opening brief on appeal, there is significant evidence in the record showing that in prior applications to AIG's underwriters, the Insureds disclosed this long-term debt, and AIG's underwriters did not raise premiums or add bankruptcy exclusions. Moreover, there is evidence showing that in 2014 AIG waived the requirement that the Insureds submit any "Financials for EB Holdings [II]" in connection with their renewal application. Considering this evidence, a reasonable jury could conclude that the Insureds' failure to represent to AIG's underwriters in 2015 that its $1.6 billion debt was still outstanding was not actually material to whether and how Illinois National would renew the policy. We therefore conclude that there are triable issues of fact on whether the Insureds' omission was material to Defendants' acceptance of the risk in renewing the policies.

Accordingly, we reverse the district court's order granting summary judgment to Illinois National on its affirmative defense. Because the district court concluded that no coverage was available to the Insureds under Illinois

National's policies due to the Insureds' material misrepresentation, the district court also held that coverage was unavailable under Continental and Federal's excess policies. We thus reverse the court's order granting summary judgment to Continental and Federal too.

## IV. We Decline to Affirm the Judgment on Alternative Grounds.

Illinois National, Continental, and Federal devote much of their appellate briefing to arguing why the panel should affirm the district court's grant of summary judgment on alternative grounds. This includes Illinois National's argument that Endorsement #23 of the policy precludes coverage for the Insureds' claims. We decline to reach these arguments in the first instance. *See generally Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir. 2013) (en banc) (observing that it is "standard practice . . . to remand to the district court for a decision in the first instance without requiring any special justification for so doing"), *overruled on other grounds by Shinn v. Ramirez*, 596 U.S. 366 (2022); *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) (discussing prudential reasons why an appellate court typically does not address alternative grounds for affirmance).

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment to Defendants on the affirmative defense of material misrepresentation and **REMAND** to the district court so it may evaluate in the first instance the other issues briefed by the parties in their summary judgment motions.

BENNETT, Circuit Judge, concurring:

I agree with the majority on everything except its decision not to decide whether the parties chose Texas law to govern the affirmative defense of material misrepresentation under Restatement (Second) of Conflict of Laws ("Restatement") § 187. In my view, Endorsement #2 of the policy reflects the parties' clear intent for Texas law to govern the affirmative defense of material misrepresentation.

Endorsement #2 to the policy is titled "*Texas* Amendatory Endorsement Cancellation and Nonrenewal." (emphasis added). Endorsement #2 also uses identical language found in § 551.052 of the Texas Insurance Code, which permits the insurer to cancel a policy "at any time during the term of the policy for . . . fraud in obtaining coverage." Tex. Ins. Code § 551.052(c)(1). Thus, the parties agreed to an express "Texas" endorsement that tracks verbatim a Texas statute that permits an insurer to cancel a policy based on fraud in obtaining coverage. This is analogous, if not virtually identical, to the affirmative defense of material misrepresentation during the underwriting process, and makes it clear that the parties intended Texas law to govern the affirmative defense. *Compare Garcia v. Vera*, 342 S.W.3d 721, 725 (Tex. Ct. App. 2011) ("The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party 'actually and justifiably relied upon,' causing him injury." (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001))), *with Mayes v. Mass. Mut. Life Ins.*, 608 S.W.2d 612, 616 (Tex. 1980) (explaining that the elements of the

affirmative defense of material misrepresentation are: "(1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation").

The majority declines to adopt this view because other states also allow for the cancellation of an insurance policy based on fraud in obtaining coverage. Maj. 15. But I believe that is irrelevant because Endorsement #2 explicitly refers to *Texas*. All that remains is the majority's suggestion that the parties' failure to explicitly reference Texas's 90-day notice requirement precludes a finding that the parties intended Texas law to govern the affirmative defense. Maj. 15–16. But Restatement § 187 does not require such an explicit expression, as the commentary states that "even when the contract does not refer to any state, the forum may nevertheless be able to conclude from *its provisions* that the parties did wish to have the law of a particular state applied." Restatement § 187 cmt. a (emphasis added). For the reasons discussed above, the provisions of Endorsement #2 reflect the parties' clear intent for Texas law to govern the affirmative defense of material misrepresentation. I would therefore find that Restatement § 187 also requires the application of Texas law to the affirmative defense of material misrepresentation.